### HANNAH v. SWIFT. *
#### No. 6690.

Circuit Court of Appeals, Ninth Circuit.

Sept. 7, 1932.

*Rehearing denied November 14, 1932.

Aitken & Aitken, of San Francisco, Cal., for appellant.

Reuben G. Hunt and A. B. Kreft, both of San Francisco, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges.

WILBUR, Circuit Judge.

May Hannah appeals to this court from an order of the referee subsequently affirmed by the District Court denying her petition praying that all the property in the hands of the receiver in bankruptcy, and all the rents, issues, and profits therefrom be turned over to her, on the ground that the property is community property. An involuntary petition in bankruptcy was filed on May 31, 1929, against the bankrupt, Jesse D. Hannah, and on August 11, 1930, he was adjudged a bankrupt. On December 3, 1930, the bankrupt filed a schedule of his debts and assets, stating his secured debts to be $276,558.70, and his unsecured debts to be $68,238.08.

In his order denying the petition of May Hannah, the referee found that all of said debts were community debts and that the property owned and possessed by the bankrupt was and is the community property of the said parties.

Appellant's contention seems to be that as a member of the marital community she is entitled to the possession of the entire community property, her husband consenting thereto, and such property can neither be applied to the debts of the husband nor to the

debts of the community. In short, that she can take the property and the community debts must go unpaid, save and except such indebtedness as is secured by mortgage or other encumbrance executed by the husband and wife. In view of the novelty of the proposition it would perhaps be better to state the contention of the appellant in the brief filed on her behalf. After referring to the amendment to the Civil Code of California by the addition of sections 161a and 172a, and the effect thereof, the brief states:

"It necessarily follows that as an owner of the property she is entitled to possession of it and that her property cannot be taken by her husband or for his debts. * * *

"Apart from the fact that the law of California does not recognize any such thing as 'community debts,' only 'separate' debts are involved here, for two sufficient reasons: (1) The proceeding is against Jesse D. Hannah, alone, and a bankruptcy court cannot concern itself with the debts of any person except the bankrupt; and (2) Every claim presented is filed as a claim against Jesse D. Hannah, alone, and is based on a contract made with him alone. The only distinction between the Wallace Case [In re Wallace (D. C.) 22 F.(2d) 171] and the present case is that in Washington (under the statute) debts might be either community or separate debts, and in California only separate debts are known. * * *

"As a matter of plain common sense it is clear that neither the husband nor his trustee can hold or sell any tangible rights in community property. As the statute says, the wife must join to make any transfer good.

"To begin with, the wife's rights or interests (whatever they are) cannot be sold at all; nothing that anyone else can do can affect them. They include, at the least, the right to dispose of half of the property by will. So that a buyer cannot possibly get more than a half interest, in any event. But the husband's interest (whatever it is) is too uncertain to be of any value to anyone. One of the rights of the wife is to have all the community property as her own if the court awards it to her in a divorce action. Consequently a buyer—from the husband or trustee—cannot be sure of getting any interest at all.

"Furthermore neither the husband nor the trustee can convey title—even to such indefinite rights as we have been discussing. The wife must join in the deed. A deed by the husband or the trustee conveys no title if she asserts her rights against it.

"Obviously the creditors have no greater rights than the husband himself; so the trustee gains nothing by being their representative.

"The husband cannot transfer the property or any interest in it. The creditors cannot take it for his debts. Therefore it cannot pass to the trustee. * * *

"As the law stands now [since 1927], husband and wife own the property together, as co-owners. Neither has any independent interest, and the title can be affected only through their joint act. Obviously the wife's ownership cannot be affected by the acts of her husband (or anyone else) in which she does not join; nor can the matrimonial community of co-ownership in property be disrupted by the intrusion of anybody but the husband as owner of any part interest in the property. * * *

"The California cases heretofore decided, apparently holding that community property is subject to the husband's debts, are of course based on the old expectancy doctrine and mean nothing at this time."

After citing Stockand v. Bartlett, 4 Wash. 730, 31 P. 24, dealing with community property in the state of Washington, it is stated in the brief:

"It is also clear, then, that neither the property nor Mr. Hannah's interest could have been taken for Mr. Hannah's debts.

"As he could not transfer it, and it could not be taken for his debts, the community property could not pass to his trustee in bankruptcy at all.

"There is no escape from the logic of the above case. Let us retrace the steps."

After claiming that the rights of the husband and wife in community property under the present law of California are practically identical with estates of entirety, appellant states her position as follows:

"But the whole matter is quite simple, as soon as we realize that under California law a wife now has an owner's interest, not a mere expectancy.

"As she is now a co-owner of an equal interest, it is perfectly obvious that the ownership of the property, as a whole, cannot be transferred, or taken from her, by any act or proceeding to which she is not a party. Neither her husband nor his creditors can take the property, in which she has equal ownership, from her. The property, then, cannot pass to the trustee.

"Nor can any 'interest' of the husband

therein so pass. To begin with, any interest that the husband can have independently of her (i. e., any 'separable' interest) must be a mere expectancy which can never ripen into present, separate ownership, unless (1) he survives the wife, and (2) she has not, meanwhile, obtained all the property in a divorce action, and does not will away half of it at her death. Such expectancy is not an estate or interest at all, under Civ. Code, § 700. Consequently, it cannot pass to the trustee.

"There is, however, a more fundamental reason why no interest of the husband can so pass. That is, that the interests of husband and wife, as various decisions put it, are 'interfused,' or 'unified'; that they are held without possibility of severance.

"It is of the very essence of community property that husband and wife own it together and continue to own it together. The law does not provide for their interest being separated, or for anyone else joining them in such ownership. It has never been supposed (even when the husband's 'dominion and control' was quite untrammeled) that a husband could transfer a part interest in community property so as to introduce a stranger into the ownership thereof.

"There cannot be community property that is not owned by husband and wife, or in which anyone else has an interest.

"It is impossible for any stranger—whether vendee or creditor or trustee,—to participate in the rights and privileges of the matrimonial community, either as to property ownership or otherwise. As one court so trenchantly says of its trustee, 'He is not her husband's substitute and cannot be.'

"By definition, community property ownership is that of 'community interest of husband and wife.' Civ. Code, § 682.

"It is not 'of husband and another,' or 'of husband and the wife's successors,' or 'of the husband's creditors and his wife,' or of any persons but 'husband and wife.'

"The law does not provide for any 'community interest of a man's trustee, and his wife.'

"Neither Mr. Hannah, nor his creditors, nor the court, can interject his trustee as his successor or substitute or associate in the matrimonial community.

"Under the code, too, the wife's right of ownership entitles her to immediate possession. That possession is exclusive of all the world except the husband. No creditor or trustee can share possession of the property with her; and she would be entitled to this exclusive possession against any purchaser at a trustee's sale.

"It is for these reasons that the community is indissoluble (by outsiders) and the community interest of the spouses is inseparable.

"The result, of course, is that the husband cannot transfer, nor his creditors take, any interest in the community property, and no interest whatever can pass, to the trustee.

"It will be noted that these fundamental principles apply equally to real and personal community property as the wife's ownership in both is the same."

During the course of her brief, the attitude of the appellant toward community creditors is thus stated:

"We realize that this is an unusual motion and raises a new and important question. We anticipate that we will be confronted here as we were before the referee and the district court with the argument that the granting of the motion will prevent payment being made to Mr. Hannah's creditors—that an attempt will be made to have the court base its decision on sympathy for his creditors rather than regard for Mrs. Hannah's rights. This seems to have been successful before the referee as a careful reading of the order discloses no indication of any reason for it except that the bankrupt is unable to pay more than a small portion of his indebtedness.

"It may be that people having transactions with business men may hereafter have difficulty in collecting their debts from the community property in which the latter's wives are interested—if they deal with the husbands alone and in the absence of proper authorizations from the co-owners, their wives. We know of no reason, however, for a court to be especially solicitous to see that one person's creditors collect their debts from the property of another who never participated in incurring them. Mrs. Hannah's rights in her community property are just as sacred as her rights in any other property she may own, and just as sacred as any other person's property rights; and they are not subject to debts which she did not incur."

It would seem to be a sufficient answer to appellant's contention to call attention to the fact that the Supreme Court of California, as early as 1861, in the case of Packard v. Arellanes, 17 Cal. 525, held that the term "community property," as used in the statutes of California as between husband and wife and the creditors, meant a residuum of

the property acquired by them after their marriage, otherwise than by gift, devise, or descent, after the payment of the community debts. The question involved in that case was whether or not, where the statute directed that the community property upon the death of the husband should pass to the wife, such property was subject to the debts of the community.

A similar question was later presented in the case of Frankel v. Boyd, 106 Cal. 608, 39 P. 939, wherein it was held that the community property assigned by the court to the wife by a decree of divorce was nevertheless subject to payment of community debts.

■ Appellant's arguments are all based upon the change made in the community property law by the enactment of Civil Code, § 161a in 1927 (Stats. 1927, p. 484). The husband testified that certain of the real estate was "acquired" after the enactment of section 161a, supra, but it is not clear from his testimony that such acquisition was not the result, in whole or in part, of the investment of community funds theretofore earned or acquired by him. A mere change in the form of investment would not change the character of ownership, nor make the legislation applicable to reinvestment of community property theretofore accumulated. Spreckels v. Spreckels, 172 Cal. 775, 158 P. 537. The referee finds that the property involved was the result of accumulations of community funds ever since the marriage of the bankrupt in 1904; that "All of the claims filed and allowed herein are those of creditors of the husband, except these obligations where the wife signed the notes, mortgages and deeds of trust; but all of such claims so filed and allowed are community debts and incurred while the husband was in the management and control of the community property and in connection therewith."

The appellant's position in this regard is not very clear. Her brief on that subject states as follows: "The referee's order finds that the property from which the money was acquired was community property; it does not find that it was acquired prior to the enactment of section 172a of the Civil Code of California, in 1917, or of section 161a, in 1927. The evidence, as disclosed by the referee's certificate, was that Jesse D. Hannah and May Hannah have been husband and wife and residents of the state of California since 1904; that all of the property has been acquired since 1917 and the most important pieces, the apartment houses, since 1927; that of the money in the trustee's hands about $15,000 was received as rents from said apartment houses; that all of the property has been bought with money earned by Mr. Hannah since 1919; that the claims proved against him herein are on debts incurred by him alone—except certain mortgages, etc., on the real property, in which Mrs. Hannah joined and with which we are not here concerned."

■ There is nothing in the amendments to the law of California which changes the rule vesting in the husband the entire management and control of the community property. The amendment to section 161a of the Civil Code in 1927 so expressly provides, referring to sections 172 and 172a of the Civil Code as theretofore enacted. There is nothing in the legislation relied upon by the appellant to indicate that the Legislature contemplated that the property acquired by the husband by his own efforts after marriage should be exempt from the debts incurred by him in the acquisition thereof.

Appellant's 72-page brief invites us to a discussion of the theory and concept of the community property law of California, its historical, judicial, and legislative development, and to a comparison of the community property systems of California, Washington, Arizona, and the law relating to estates of entirety. These questions are primarily for the courts of California to determine, and, therefore, an extended discussion by us is unnecessary and would be futile. It is sufficient to say that the courts of California have decided that the community property of the husband and wife is subject to community debts and that the management and control thereof is vested in the husband by the laws of California as declared by the state Legislature and by the courts. Civil Code, §§ 172, 172a, and Spreckels v. Spreckels, 116 Cal. 339, 48 P. 228, 36 L. R. A. 497, 58 Am. St. Rep. 170. It follows that the trustee in bankruptcy, upon an adjudication of bankruptcy arising out of community debts, is entitled to the possession of community property for the benefit of the creditors of the community.

Order affirmed.