ROGAN, Collector of Internal Revenue, v. DELANEY.

No. 9145.

Circuit Court of Appeals, Ninth Circuit.
March 14, 1940.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Norman D. Keller, James P. Garland, and Louise Foster, Sp. Assts. to the Atty. Gen., and Ben Harrison, U. S. Atty., and Edward H. Mitchell, Asst. U. S. Atty., both of Los Angeles, Cal., for appellant.

Joseph D. Brady and Frederick E. Hines, both of Los Angeles, Cal., for appellee.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

MATHEWS, Circuit Judge.

In 1930, appellee, A. J. Delaney, received a dividend of $126,500 on 1100 shares of stock of Delaney Petroleum Corporation (hereafter called Petroleum) and a dividend of $23,760 on 1,500 shares of stock of Delaney Producing & Refining Company (hereafter called Refining). In his income tax return for 1930, appellee reported one-half ($75,130) of these dividends as his income. His wife, in a separate return, reported the other half as her income. The Commissioner of Internal Revenue determined that the entire amount ($150,260) was income of appellee, and that, consequently, there was a deficiency of $4,968.07 in respect of appellee's income tax for 1930.

This deficiency, with interest in the sum of $1,265.70—a total of $6,233.77—was assessed against appellee and paid by him under protest. Appellee filed a claim for refund, which was disallowed. He then brought this action against appellant, Nat Rogan, Collector of Internal Revenue, to recover the $6,233.77. Appellant answered, jury trial was waived, the case was tried, and the court, having made and filed its findings of fact and conclusions of law, entered judgment in appellee's favor for the full amount claimed. Appellant seeks reversal.

Appellee and his wife were married in 1907 and were, at all pertinent times, citizens and residents of California. In California, all property owned by a husband or wife before marriage, and that acquired afterwards by gift, bequest, devise or descent, with the rents issues and profits thereof, is his or her separate property. Civil Code of California, §§ 162, 163. With exceptions not here pertinent, all other property acquired after marriage by either husband or wife, or both, is community property. Id., § 164. It is conceded that the stock here involved—1,100 shares of Petroleum and 1,500 shares of Refining —was community property.

Formerly, in California, the wife's interest in community property was not a present existing interest, but was a mere expectancy. United States v. Robbins, 269 U.S. 315, 325–328, 46 S.Ct. 148, 70 L.Ed. 285; Stewart v. Stewart, 199 Cal. 318, 249 P. 197; Id., 204 Cal. 546, 269 P. 439. Now, by § 161a of the Civil Code (added by Stats.1927, c. 265, p. 484, effective July 29, 1927), it is provided: "The respective interests of the husband and wife in community property during continuance of the marriage relation are present, existing and equal interests under the management and control of the husband * * *." But § 161a does not apply to community property acquired before July 29, 1927, Stewart v. Stewart, 204 Cal. 546, 269 P. 439; nor to property received in exchange for or purchased with the proceeds of such community property, Hannah v. Swift, 9 Cir., 61 F.2d 307, 310; nor to income derived therefrom, Hirsch v. United States, 9 Cir., 62 F.2d 128; Shea v. Commissioner, 9 Cir., 81 F.2d 937, 939; Devlin v. Commissioner, 9 Cir., 82 F.2d 731.

Thus, in California, there are two types of community property: (1) Community property in which the wife has a present existing interest and (2) community property in which the wife has no such interest. If the property here involved—1,100 shares of Petroleum and 1,500 shares of Refining— was community property in which appellee's wife had a present existing interest, one-half of all dividends thereon was income of appellee, and the other half was income of his wife. United States v. Malcolm, 282 U.S. 792, 794, 51 S.Ct. 184, 75 L.Ed. 714. If it was not community property in which appellee's wife had a present existing interest, all dividends thereon were income of appellee. United States v. Robbins, supra; Hirsch v. United States, supra.

The trial court found that the Petroleum shares were purchased by appellee and his wife on September 14, 1927, with community funds acquired after July 29, 1927, and that, therefore, the shares were community property in which appellee's wife had a present existing interest equal to that of appellee. This finding is specified as error and is clearly erroneous.

The evidence [1] establishes, without conflict, the following facts:

Petroleum was organized in 1926. Its organizers and chief stockholders were C. W. Weatherwax, Harry C. Hunt, Alvah M. Kaime and appellee. Petroleum was authorized to issue, and did issue, 5,000 shares of stock of the par value of $100 each. Of the 5,000 shares issued, 1,324 shares were subscribed for by appellee on February 9, 1927, and were issued to appellee on or before June 21, 1927. [2] Of the 1,324 shares issued to appellee, 100 shares were transferred to Harry F. Rasnear and are not here involved, 124 shares were transferred to appellee's wife and are not here involved, and 1,100 shares are here involved. The 1,100 shares involved were not, at any time here pertinent, transferred or disposed of by appellee. Appellee, therefore, had no occasion to purchase them, and did not purchase them, on September 14, 1927.

All Petroleum shares were fully paid for before they were issued. The price paid for them was $100 a share. Of the 1,324 shares issued to appellee, 100 shares, not here involved, were paid for by Rasnear, and 1,224 shares were paid for by appellee. Of the 1,224 shares paid for by appellee, 1,124 shares, including the 1,100 shares here involved, were paid for with money loaned to appellee by Weatherwax, Hunt and Kaime. The loans were unsecured. The shares were not issued or transferred to Weatherwax, Hunt and Kaime, and were never owned or held by them. They never claimed ownership of the shares, but recognized appellee as the owner thereof, before as well as after the loans were repaid. [3] They could not have sold the shares and, so far as the evidence shows, never attempted or pretended to sell them.

■ The trial court found that the loans were made pursuant to two agreements, one of which was that appellee would become the owner of the shares when and if he repaid the loans. Thus, in effect, it was found that appellee agreed not to acquire the shares until the loans were repaid. We find no evidence of any such agreement. If however, there was such an agreement, it was not complied with, but was disregarded. For, as stated above, appellee did acquire the shares on or before June 21, 1927. The fact, if it be a fact, that he had agreed not to do so is, for present purposes, immaterial. For this is not a suit by Weatherwax, Hunt and Kaime against appellee. It is, in effect, a suit by appellee against the United States. Moore Ice Cream Co. v. Rose, 289 U.S. 373, 382, 53 S.Ct. 620, 77 L.Ed. 1265. The United States was not a party to, nor bound by, any agreement between appellee and Weatherwax, Hunt and Kaime. Hence, the United States is not, nor is its Collector (appellant here), precluded from asserting that appellee acquired the shares—as in truth and fact he did acquire them—on or before June 21, 1927.

■ The other agreement, the court found, was that appellee was obligated to repay the loans only out of any salary he might receive from Petroleum. This agreement also, if made, was disregarded. The loans were repaid, but not out of salary. [4] Furthermore, whether complied with or disregarded, the supposed agreement could not and did not prevent or delay appellee's acquisition of the shares.

■ The court found that the shares were, on June 21, 1927, "made out" in appellee's name, but subject to the supposed agreements between him and Weatherwax, Hunt and Kaime. The finding is not supported by evidence. The evidence shows that the shares were issued—not merely "made out"—to appellee on or before June 21, 1927. There is no evidence that they were "made out" or issued subject to any agreement between appellee and Weatherwax, Hunt and Kaime. There is no evidence, nor is it claimed or contended, that Petroleum was a party to any such agree-

---

[1] The evidence consists of a stipulation of the parties, fifteen exhibits attached to and made part of the stipulation, other documentary evidence, and the testimony of six witnesses, including appellee.

[2] One share was issued before June 21, 1927. The others were issued on June 21, 1927.

[3] On August 4, 1927—a month and ten days before the loans were repaid—Weatherwax, Hunt, Kaime and appellee attended and participated in a meeting of Petroleum stockholders, the minutes of which show that appellee was then and there recognized as owning, was permitted to vote, and did vote, 1,224 shares of Petroleum stock, including the 1,100 shares here involved, and that his right to do so was not questioned.

[4] The loans were repaid by appellee from a so-called bonus of $125,000 paid to him by Petroleum on September 14, 1927, pursuant to a resolution of its board of directors dated August 4, 1927.

ment, or that it had any rights or obligations thereunder. It should here be observed that, although Weatherwax, Hunt and Kaime were stockholders of Petroleum, they were not Petroleum. In re Marblehead Land Co., 9 Cir., 96 F.2d 72, 73. Having received full payment for the shares, Petroleum had no right to withhold them from appellee, or to limit or condition his ownership of them, nor is there any evidence that it attempted to do so.

It is said that, although executed on or before June 21, 1927, certificates for the shares were not removed from Petroleum's certificate book until after September 14, 1927, and that, until such removal, there was no delivery of the shares to appellee. There is no merit in this contention. The evidence shows that, at all pertinent times, the book and the certificates were in Petroleum's office—which was also appellee's office—in the custody of J. R. Covington. Covington was Petroleum's secretary and, as such, had custody of the book. He was also appellee's personal secretary and office manager and, as such, had custody of the certificates. The book was Petroleum's property. As to it, Covington's possession was Petroleum's possession. The certificates were appellee's property. As to them, Covington's possession was appellee's possession. Whether the certificates were in or out of the book is immaterial.

■ The loans were repaid by appellee on September 14, 1927. Such repayment did not, as the trial court supposed, constitute a purchase of the shares. It was merely the payment of a debt. Acquisition of the shares did not await or depend on repayment of the loans. It occurred on or before June 21, 1927. At that time, appellee's previously inchoate title to the shares became a fully vested legal and equitable title. Hence, Russell v. Laugharn, 9 Cir., 20 F.2d 95; Vieux v. Vieux, 80 Cal.App. 222, 251 P. 640, and other cases dealing with inchoate titles are not in point.

■ The loans preceded the acquisition of the shares. At the time they were made and at the time the shares were acquired, appellee owned no separate property. Presumably, therefore, the loans were made on the faith and credit of the community. In that community—the only community which then existed—appellee's wife had no present existing interest. Hence, the borrowed money and the shares therewith acquired were community property in which appellee's wife had no present existing interest. Schuyler v. Broughton, 70 Cal. 282, 11 P. 719; Dyment v. Nelson, 166 Cal. 38, 134 P. 988; Estate of Ellis, 203 Cal. 414, 264 P. 743; Woods v. Naimy, 9 Cir., 69 F.2d 892, 895.

■ Nor was their status, as such community property, altered by the fact, if it be a fact, that the money with which the loans were repaid was community property in which appellee's wife had a present existing interest. Palen v. Palen, 28 Cal. App.2d 602, 83 P.2d 36; Woods v. Naimy, supra. Therefore, we need not determine when, if at all, appellee earned the money with which the loans were repaid. [5]

■ The trial court found that the Refining shares were purchased by appellee on May 28, 1928, with funds borrowed from Petroleum on the community credit, and that, therefore, they were community property in which appellee's wife had a present existing interest. The finding is specified as error and is clearly erroneous. There is no evidence that the Refining shares were purchased with borrowed funds. The evidence establishes, without conflict, that they were purchased by appellee, or by Petroleum as appellee's agent, with the proceeds of 4,250 shares of stock of California Petroleum Corporation which appellee had acquired in January, 1927, and which, it is conceded, were community property in which appellee's wife had no present existing interest. Consequently, the Refining shares also were community property in which appellee's wife had no present existing interest. Hannah v. Swift, supra.

As all the shares involved—1,100 shares of Petroleum and 1,500 shares of Refining —were community property in which appellee's wife had no present existing interest, all dividends thereon were income of appellee.

The trial court found that, in computing his net income for 1930, appellee was entitled to a deduction of $1,470.60 which the Commissioner disallowed. Appellant concedes that this finding is correct, and that disallowance of the claimed deduction resulted in an overassessment and overpay-

[5] If, as appellee claims, the money was earned by him after July 29, 1927, his wife may be entitled to reimbursement from him for her one-half interest. Spreng v. Spreng, 119 Cal.App. 155, 6 P. 2d 104. But, as this is not a suit between appellee and his wife, we express no opinion on that subject.

ment of appellee's tax. The amount of such overpayment remains to be determined. For that purpose, and for the entry of such judgment as may be proper, the case is remanded.

Reversed and remanded.

DENMAN, Circuit Judge.

I concur in Judge MATHEWS' opinion and the decision it indicates.

Delaney Petroleum Corporation Dividends.

What I gather from Mr. Delaney's sketchy and hesitant testimony of his recollection of the events over ten years before under strongly leading questions by the court is that the understanding he had with his associates, sometime late in 1926 before the organization of the Delaney Petroleum Corporation, was not carried out after that corporation subsequently was organized.

The most that can be made out from that testimony is that Mr. Delaney was to have a portion of that corporation's shares after he had paid for the shares by his services. What actually transpired is that after the organization of the corporation he subscribed for shares of its original issue and agreed to pay for them as would any subscriber. He actually did pay for them before the amendment of the California community property law became effective on July 29, 1927, with community funds consisting of money loaned him by his associates. He had no agreement with the corporation, of which he was general manager, other than the subscription.

Delaney stipulates that the certificate stubs and his company's stock ledger show the 1,100 shares were issued to him on June 21, 1927. Following this, and on August 4, 1927, prior to the payment of his loan from his associates, he voted the stock at a stockholders' meeting, signing the minutes to that effect.

Upon payment of his subscription, at the very latest, he acquired the shares. San Joaquin Land & Water Co. v. Beecher, 101 Cal. 70, 79, 35 P. 349, 352; Ballantine and Sterling, California Corporation Laws (1938 Ed.) § 50, § 120. Nothing further was required to complete his ownership. Since the entire transaction antedated the change of July 29, 1927, and the shares were acquired with "old type" community funds, the shares were held as "old type" community property.

In my opinion the evidence sustains the lower court's finding that the funds which discharged the loans were earned after July 29, 1927. However, I agree that it is the law of California that the payment of the loan of his associates from funds so earned did not change the character of the ownership of the shares acquired under the earlier community property law.

Delaney Producing and Refining Company Dividends.

With regard to the acquisition of the 1,500 shares of Delaney Producing and Refining Company, it appears that Delaney had an account on the books of the Delaney Petroleum Corporation, in effect, an account payable to Delaney arising from a loan to the Delaney Petroleum Corporation of certain of Delaney's California Petroleum Company stock which had been used by that corporation in another transaction and resulted in a credit to Delaney of $106,250 which had been reduced by June 1, 1928, to $37,500. This credit was "old type" community property.

In Delaney's books appear certain items which he describes as loans by the Delaney Petroleum Corporation to purchase shares of Delaney Producing and Refining Company. One of these entries indicates that 2,707 shares of the Refining Company stock were to be purchased from J. B. Dabney at $10 per share and 2,300 from some seller whose name is not indicated.

On May 31, 1928, appears an item of $18,949 called a loan "to purchase" 2,707 of these shares at $7 per share. The record does not show that these shares were then purchased. On June 1, 1928, appears another entry of $31,121 "to purchase" 2,300 more shares at $10 per share and also an additional $3 per share on the purchase of the previously mentioned 2,707 shares to be purchased from Dabney.

On the same day, June 1, 1928, appears an item in Delaney's books summarizing the transaction of the two previous entries aggregating $50,070 in which it appears that there had been purchased in all 5,007 shares of the Refining Company stock at $10 per share, of which but 1,500 shares at $10 per share had been purchased for $15,000 for Delaney. The only inference that can be drawn from these items is that the $10 per share full price for the purchase of these shares had been paid not earlier than June 1, 1928. In this summarizing entry Delaney says of the stock purchased for him "—cost of same to be applied against loan account to D. P. Corp. (Loan of Cal. Pet. stock)."

On this date also there appears in the California Petroleum loan account of the Delaney Petroleum Corporation books a debit against A. J. Delaney's balance of $37,500 of $15,000 for the 1,500 shares of stock. These entries do not sustain Delaney's burden of proof that the Collector erred in assessing the dividends as on stock purchased by him out of the balance of $37,500, his credit with the Delaney Petroleum Corporation, which credit was old type community property.

In this connection it should be noted that it is stipulated that there was no resolution authorizing the Delaney Petroleum Corporation to lend money to Delaney, no note given by him to the corporation, and the only proof relied on in brief and argument of the character of the transaction to purchase the 1,500 shares is the unexplained entries in his books and the books of the corporation.

STEPHENS, Circuit Judge.

I dissent. In order to fully set forth my views, I desire to file the following opinion:

Appeal by the Collector of Internal Revenue from the judgment of the District Court allowing recovery of certain income taxes paid by appellee for the calendar year 1930. The income in question consisted of dividends from two separate blocks of stock, namely, 1,100 shares of Delaney Petroleum Corporation and 1,500 shares of Delaney Producing & Refining Company. The Collector contends that each of these blocks of stock constituted community property in which the wife did not have a present existing interest, but rather a mere expectancy, and hence that the entire income therefrom was properly taxable to the husband [taxpayer]. The appellee-taxpayer on the other hand argues, and in this he is supported by the findings of the District Court [1], that the stocks were community property belonging to the taxpayer and his wife, and that under the applicable laws the wife had a present and existing interest therein, permitting the dividends to be reported for taxation one-half by each spouse. The two blocks of stock should be considered separately, since they were purchased at different times and under varying conditions.

The Delaney Petroleum Corporation was incorporated in California on November 10, 1926, by taxpayer and others. On November 27, 1926 a permit to sell and issue stock was given by the State Corporation Department, authorizing the corporation to issue 5,000 shares of its stock to the persons named in the application (including among others, the taxpayer) at par for cash so as to net the corporation the full amount of the selling price thereof.

On February 9, 1927, the taxpayer subscribed for 1,224 shares of the stock of the company and agreed to pay for the same in cash at the price of $100 per share "as called for by the directors of said corporation".

The corporation received payment for said 1,224 shares in the following sums and at the following times:

| December 31, 1926 | $ 5,000.00 |
|---|---|
| January 5, 1927 | 5,000.00 |
| February 10, 1927 | 6,400.00 |
| March 21, 1927 | 23,600.00 |
| June 21, 1927 | 27,466.67 |
| June 21, 1927 | 27,466.66 |
| June 21, 1927 | 27,466.66 |
| June 21, 1927 | .01 |
| Total | $122,400.00 |

Certificates representing said shares in taxpayer's name are dated as follows:

| January 7, 1927 | 1 share |
|---|---|
| June 21, 1927 | 99 shares |
| June 21, 1927 | 1,024 shares |
| June 21, 1927 | 100 shares |
| Total | 1,224 shares |

[1] Rule 52 (a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides that the trial court's findings are not to be disturbed on appeal unless they are clearly erroneous, and that "due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses". In the instant case the trial judge emphasized the fact that he believed the taxpayer and his witnesses, by the following language: "During the course of the trial, the Court followed the testimony with very careful attention, giving particular note to the attitude of the witnesses on the stand, their apparent sincerity and their general manner of answering questions, and so forth. The Court is of the opinion that plaintiff's witnesses told the truth and that the testimony they presented constituted the true version of what actually happened. This finding of the Court extends to all of the testimony covering all of the issues in the case. The simple forthrightness of the witnesses, and the inherent plausibility of their version of the facts, contributed to the Court's finding in this regard."

Prior to 1930 the taxpayer transferred 124 shares of said stock, leaving in his name in 1930, 1,100 shares which are involved in this appeal.

The District Court found as a fact that said shares of stock were "acquired by plaintiff and his wife on September 14, 1927, and were paid for with community funds acquired after July 29, 1927" (the effective date of the California statute giving the wife a present existing and equal interest in community property). These findings are challenged by the Collector.

At the outset it is necessary to deal with a contention made by the taxpayer that the date of acquisition of the stock is immaterial—that if the stock was paid for with community funds acquired after July 29, 1927, that fact gives the wife a present existing interest therein. We are referred to the California case of Vieux v. Vieux, 80 Cal.App. 222, 251 P. 640, in support of this contention. The cited case involved the question as to the ownership of certain property which the husband had contracted to purchase before marriage, but which had been paid for after marriage with community funds. It was held that the property was community property. It should be noted, however, that the same statute relative to community ownership of property was in effect during the entire period of time involved in the cited case. There was no question of giving a retroactive effect to a statute. At the time the husband acquired the property by his contract of purchase he knew that if the same was paid for with community funds it would belong to the community. In the instant case, however, assuming for the purpose of discussion without so deciding, that the stock was acquired before the effective date of the California statute giving the wife a present existing interest in community property, to say that the payment for the same with community funds acquired after the effective date of the statute had the effect of giving the wife a present existing interest in the stock would be to give the statute a retroactive effect. This it has definitely been decided cannot be done. Hirsch v. United States, 9 Cir., 1932, 62 F.2d 128, and cases therein collated. It is therefore necessary to look into the question of the date of the acquisition of the stock. If it be determined that the stock was acquired prior to July 29, 1927, then the decision of the District Court to the effect that the wife had a present existing interest therein must be reversed. If it be found that the stock was acquired after July 29, 1927, then the type of community property that went into its purchase becomes important. If in that circumstance the funds which went to pay for the stock were community property in which the wife had a mere expectancy, the decision of the District Court is erroneous. If they represented community property acquired after July 29, 1927, then the decision of the trial court should be affirmed.

Considering the record with respect to the date of acquisition of the stock, the District Court based its conclusion to the effect that the stock was acquired on September 14, 1927 upon the following findings of fact: "The first two payments of $5000 each were originally advanced by plaintiff to the corporation to be later credited on stock subscriptions. The remaining payments of $112,400 were made from funds advanced by Messrs. Weatherwax, Hunt and Kaime, pursuant to an oral agreement that plaintiff would become owner of said 1124 shares when and if he paid to Messrs. Weatherwax, Hunt and Kaime the amounts so advanced, and pursuant to a written agreement that plaintiff was obligated to pay such advances only out of any salary he might receive from Delaney Petroleum Corporation. Said shares were, on June 21, 1927, made out in plaintiff's name but subject to said agreements."

The theory of the Collector is that the $112,400 advanced by Messrs. Weatherwax, Hunt and Kaime constituted a personal loan to the taxpayer, and that the taxpayer with the proceeds of that loan purchased the shares of stock, and that consequently the stock was owned by the taxpayer at all times subsequent to the payment to the corporation therefor. This theory, however, entirely overlooks the findings of the trial court to the effect that the advances were made upon the oral agreement that plaintiff was not to become the owner of the stock until and unless the taxpayer had repaid said sums so advanced. This finding is amply supported by the evidence. For instance, the taxpayer testified,

"Q. Prior to that time [the time of the first advance] had you had conversation with these three gentlemen relating to the ownership of this stock? A. Yes. * * *

"Q. Did these gentlemen say anything to you regarding ownership of your interest

or stock in the company? A. Yes, I wouldn't have it until I paid for it.

\* \* \* \* \*

"Q. He [Weatherwax] said that they would put up the full amount of $500,000 and when—if and when the company was a success, in which I had to do the work,— I had been in the business some twenty-six years before, and so they told me to go ahead and manage the Delaney Petroleum Corporation and as soon as we got it on a paying basis, why, then I could go ahead and pay for my stock out of the salary which they were going to vote me later. When I did that, why, some of the stock was mine. That is all I can say."

Furthermore it should be noted that if the Collector's theory [that the moneys advanced by Weatherwax, Hunt and Kaime constituted a personal loan to taxpayer, and that taxpayer with the proceeds of that loan purchased the shares of stock] is correct, under the normal procedure the indebtedness would continue whether or not the venture was successful. However, the taxpayer gave these parties no promissory note for the amounts advanced, but instead gave them receipts which recited that the amounts were "payable by me from salary to be received from the Delaney Petroleum Corporation. Said salary being subject to the surplus of the said corporation". These receipts substantiate the taxpayer's version of the transaction.

In other words, the stock was owned by Messrs. Weatherwax, Hunt and Kaime regardless of the fact that the certificates therefor were made out in the taxpayer's name. It is also clear from the record that the certificates so made out in the taxpayer's name were left in the stock certificate book, and were not delivered to the taxpayer until September 14, 1927, the day he repaid his associates the amounts advanced by them. It has been suggested that since the stock certificate book was in the custody of the secretary of the corporation, and since the secretary of the corporation was also the taxpayer's personal secretary and office manager, the secretary's possession of the certificates was in fact the taxpayer's possession. However, the secretary of the corporation testified that the stock certificates were not delivered to the taxpayer until after September 14, 1927. This evidence further supports the conclusion of the trial court that the stock was not acquired by the taxpayer until September 14, 1927.

Having determined that the shares of stock were not acquired by the taxpayer until after July 29, 1927, it is next necessary to determine whether the trial court was correct in its conclusion that community property acquired subsequent to July 29, 1927 went to pay for the same.

As stated above, the trial court found that the first two payments of $5,000 each were originally advanced by the taxpayer to the corporation to be later credited on stock subscriptions. The 100 shares represented by these payments are not involved herein. It is the $112,400 advanced by the taxpayer's associates and repaid by taxpayer with which we are concerned. This amount was paid by taxpayer out of a bonus of $125,000 which he received from the Delaney Petroleum Corporation on September 14, 1927. In this connection the trial court found that said bonus constituted payment for services of the taxpayer to the corporation, all of which were rendered subsequent to July 29, 1927. This finding is also challenged by the Collector.

The bonus in question was voted by the corporation to the taxpayer on August 4, 1927. The resolution authorizing the payment of the bonus recited that an offer had been made by Richfield Oil Company of California to purchase from the corporation certain described property and on certain terms. It was then resolved that a conditional sales contract be entered into as of August 1, 1927. The resolution also contained the following:

"Resolved that Whereas, A. J. Delaney [taxpayer] has been instrumental in bringing about a sale of certain properties on Signal Hill to the Richfield Oil Company, and

"Whereas, the profit on the sale of these properties is largely due to his individual dealing,

"Now, Therefore, Be it Resolved, that a bonus of One Hundred and Twenty Five Thousand ($125,000.00) Dollars be paid to A. J. Delaney out of the surplus earnings of the corporation when earned."

The evidence as to the exact dates of the negotiations leading to the sale is conflicting. There is testimony, however, to the effect that the negotiations required only two or three days and that the final negotiations were had after the meeting of the directors on August 4th at which the above resolution was adopted.

The Collector, however, points to a deposit of $25,000 which was made by the Richfield Company to the Delaney Petroleum Corporation on July 22, 1927, and contends that this is proof that the negotiations were pending at that time. However, the effect of this is taken away by testimony of the taxpayer to the effect that it was· a good faith deposit required before the taxpayer would undertake any negotiations, and that the actual negotiations took place later.

In the circumstances, the finding of the trial court that all of the services rendered by the taxpayer to the corporation were rendered subsequent to July 29, 1927, is not clearly erroneous. This being true, the court was not in error in determining that community property acquired subsequent to July 29, 1927 went to pay for the stock in question, and that the stock was therefore community property of the time in which the wife had a present existing interest.

Turning now to the 1,500 shares of Delaney Producing & Refining Company stock, the District Court found that these shares were paid for with funds borrowed from Delaney Petroleum Corporation on the community credit, and therefore constituted community property of the type in which the wife had a present existing interest. The Collector argues that this finding is erroneous, but that the money which went into the purchase of the stock was traceable directly to community property earned and owned in 1923 or prior thereto.

The stipulated facts ·show that the taxpayer owned in 1923, certain stock of the Dabney Oil. Syndicate, and that the taxpayer acquired in 1927, as a result of a merger of the Dabney Oil Syndicate and the California Petroleum Corporation, certain stock of the latter company. It was further stipulated that this California Petroleum stock was turned over by the taxpayer to the Delaney Petroleum Corporation in 1927 and that the taxpayer was given a cash credit on the books of the Delaney Petroleum ·Corporation in the amount of $106,250. On May 28, 1928 this account showed a remaining credit of $37,500.

The 1,500 shares of stock with which we are here concerned were a part of a block of 5,007 shares purchased by the Delaney Petroleum Corporation for its stockholders, taxpayer and Messrs. Weatherwax, Hunt and Kaime. The books of the Delaney Petroleum Corporation show the first purchase of 2,707 shares to have been made on May 28, 1928. The next purchase was made on June 6, 1928. On June 1, 1928, prior to the date of the second purchase, taxpayer's account with the Delaney Petroleum Corporation above referred to was debited with $15,000 for 1,500 shares of Delaney Producing & Refining Company stock. This substantiates the finding of the trial court that the 1,500 shares of stock were purchased by the Delaney Petroleum Corporation for the taxpayer on May 28, 1928.

During the period between May 28, 1928, and June 1, 1928, the purchase price of said 1,500 shares of stock was carried on the books of the Delaney Petroleum Corporation as an account receivable. The trial court found that there was in fact a loan of this amount from the company to the taxpayer, which was thereafter paid off by debiting the taxpayer's account in the ·sum of $15,000 as above set forth. This finding the Collector argues is erroneous, since the cash credit was in excess of the cost of the 1,500 shares of stock. However, this fact alone is not enough to overturn the finding of a loan in fact by the trial court. The finding of the trial court is substantiated by the taxpayer's personal books, in which the following entry appears as of May 31, 1928: "Loan by D. P. Corp. to purchase 2707 sh of D.P.&Refg.Co. at $7 per sh from Jos. B. Dabney"—and is not clearly erroneous.

Since there was a loan by the Delaney Petroleum Corporation to the taxpayer of the funds used to purchase the stock, and since no security was given for the debt, the presumption is that the husband pledged the credit of the community. Schuyler v. Broughton, 70 Cal. 282, 11 P. 719. The entire transaction having taken place subsequent to July 29, 1927, it is obvious that the trial court's determination that the stock· constituted community property of the type in which the wife had a present existing interest is correct, unless the situation was changed by the fact that community property acquired prior to July 29, 1927, in which the wife had merely an expectancy was used to repay the amount borrowed. It would appear that it does not, and that the property acquired subsequent to July 29, 1927, on the community credit retained its character of community property in which the wife had a present existing interest. It is settled that a transfer from

husband to wife, or the payment by the husband of an encumbrance on the wife's property, raises a presumption of gift to the wife. Tilden v. Tilden, 81 Cal.App. 535, 542, 254 P. 310. It must be presumed, therefore, that the taxpayer when he paid off the loan with community funds in which the wife had a mere expectancy made a gift to the wife of whatever right, title and interest was necessary in order to preserve her present existing community interest in the stock.

The decision of the District Court should be affirmed.