[Sac. No. 5519.   In Bank.   Jan. 25, 1944.]

ROBERT E. BOYD, as Executor, etc., Appellant, v. W. L. OSER, as Administrator with the Will Annexed, etc., Respondent.

Duard F. Geis for Appellant.

J. Oscar Goldstein, Burton J. Goldstein and P. M. Barceloux for Respondent.

Burr & Smith as Amici Curiae on behalf of Respondent.

SCHAUER, J. — The sole question presented on this appeal is whether a wife is empowered to make testamentary disposition of funds (or other property) accumulated or derived from the rents, issues, profits, or other income accruing subsequent to August 16, 1923 (the effective date of the 1923 amendment of section 1401 of the Civil Code, now section 201 of the Probate Code), on community property theretofore acquired by her and her surviving husband. As amended, the section provides as follows: "Upon the death of either husband or wife, one-half of the community property belongs to the surviving spouse; the other half is subject to the testamentary disposition of the decedent, and in the absence thereof goes to the surviving spouse . . ." Prior to the 1923 amendment of the quoted section, no portion of the community property (save for an exception not

, here involved) was subject to testamentary disposition by the wife. We have concluded that income from property—which ordinarily represents the value of its use—is impressed with the same character of ownership as the property itself and, hence, that the respective rights of the spouses in such rents, issues, profits, or other income, and their respective powers of disposition thereof, must be measured and determined by the law in force at the time of the acquisition of the capital or original community property from which such income arose.

Amelia Waterland and G. F. Waterland, generally known as Frank Waterland, intermarried in 1894. No children were born to them. After their marriage and until January 1, 1920, they operated a candy store in Chico, California. Both of them devoted their time and labor to the business. The income therefrom was on various occasions used for the purchase of real estate, which in turn produced income by way of rentals; the deeds to such real estate were taken in the name of Frank Waterland. The candy store was sold on January 1, 1920, and thereafter the community income of the Waterlands consisted of the rentals from the real estate, of interest on occasional loans of money, and of interest on bank accounts into which receipts from the two sources just mentioned were occasionally deposited.

On May 7, 1935, Amelia Waterland made a will, and on September 25 of the same year she died. By her will she made specific disposition of certain personal effects and separate property belonging to her, directed the payment of $50 a month to a sister as long as the sister lived, and left the residue of her estate to her husband, who was named as executor. Her will was admitted to probate and letters testamentary issued to the surviving husband, Frank Waterland. In July, 1939, and before administration of Amelia's estate had been completed, Frank Waterland died. Thereafter plaintiff herein was appointed executor of his last will and testament, and defendant was appointed administrator with the will annexed of the estate of Amelia Waterland.

Plaintiff filed an inventory and appraisement in the estate of Frank Waterland in which he claimed as separate property of the latter (by reason of the prior demise of the wife) all of the community property acquired by the Water-

lands, including the community real estate and bank accounts. Thereupon defendant filed a "Supplemental Amended Inventory and Appraisement" in the estate of Amelia Waterland, in which he included as property of her estate an interest in the real property described in the inventory filed by plaintiff in the estate of Frank Waterland and a one-half interest in several described bank accounts which stood in the name of the husband on the date of the wife's death. Defendant also made demand upon plaintiff to deliver to him from such bank accounts the sum of $13,206.01, claimed to represent the interest therein of Amelia Waterland's estate. Plaintiff refused to pay over the money, and filed this suit, in which he seeks, among other things, to secure a judgment "declaring and adjudicating the respective rights" of the plaintiff and the defendant in and to both the real and the personal property in dispute. Defendant in his answer claimed that one-half of all the community property of the Waterlands, whether acquired before or after the 1923 amendment to section 1401 of the Civil Code, was subject to the testamentary disposition of the wife, and that as administrator of her estate he was entitled to possession and control of such one-half "to the extent necessary to permit the defendant to carry into effect all of the provisions, legacies and bequests set forth and contained" in the will of Amelia Waterland. The separate estate of Amelia Waterland is admittedly insufficient to carry out the provisions of her will.

At the beginning of the trial, which was by the court without a jury, defendant conceded that none of the community property acquired by the Waterlands prior to the effective date of the 1923 amendment "would be subject to the [testamentary] disposition of the wife," but urged that one-half of the income accruing between that date and the date of the wife's death (September 25, 1935) was subject to administration in her estate. Such income was represented, so far as here in controversy, by six bank accounts which stood in the name of the husband and which totaled some twenty-four to twenty-five thousand dollars at the time of the wife's death. The court found, among other things, "that said George Frank Waterland, up to the time of the death of said Amelia Waterland, collected rents and income from the community real estate which was owned by said husband and wife as community property on

the 16th day of *July*,* 1923, and deposited said rentals and income in bank accounts, and withdrew and redeposited and reinvested the same. That all of the personal . . . property described in this finding had its source in said rentals and income so deposited, redeposited and reinvested, and *none of it had its source in the earnings* of said husband and wife after the 16th day of *July*, 1923. That none of said . . . personal property consists of the original rentals or income from said community real estate so owned on the 16th day of *July*, 1923, by said husband or wife or the original deposits of the said rentals and income so received from said property. That the . . . personal property referred to in this finding is specifically described as follows: . . .'' (Italics added.) The description which then follows includes the six bank accounts here in dispute. Judgment was entered by which it was adjudged, among other things, ''that one-half of all the personal property, including . . . bank accounts acquired on and after the 16th day of *July*, 1923, and owned by George Frank Waterland and Amelia Waterland at the time of the death of said Amelia Waterland, and hereinafter specifically set forth, . . . were and are subject to administration in the estate of Amelia Waterland, deceased, as of the time of her death, to-wit: September 25, 1935,'' and ''that the defendant is entitled to administer . . . as the property of the estate of Amelia Waterland, deceased, as of the time of her death'' one-half of the sums in the bank accounts.

Plaintiff's motion for a new trial was denied, and he thereupon appealed from that portion of the judgment which is quoted immediately hereinabove. We note that neither the findings nor the judgment of the trial court specifically fixes the dates upon or between which the rentals and income found to have been deposited in the bank accounts accrued or were received by the Waterlands. In other words, so far as the language of such findings and judgment is concerned, the funds found to have been deposited may have been income which, in part at least, accrued prior to the 1923 amendment. However, plaintiff in his opening brief makes the following statement: ''This

---

*Apparently reference to the month of July rather than of August is due to an erroneous computation of the effective date of the 1923 amendment to section 1401 of the Civil Code.

appeal is taken from that portion of the judgment which provides in effect that one-half of the community personal property which was originally acquired by the spouses in the form of real property rentals *received on and after the 16th day of July, 1923,* and still owned by George Frank Waterland and Amelia Waterland at the time of the death of said wife on September 25, 1935, is subject to administration in the estate of Amelia Waterland.'' (Italics added.) Apparently, therefore, plaintiff concedes that the bank accounts had their source in rentals *received,* and which, for the purposes of this opinion, we shall presume *accrued,* after the 1923 amendment. (The error as to the effective date of the 1923 amendment is not material in the light of the conclusion we reach.)

In support of the judgment defendant urges:

1. That one-half of all income accruing or received by the spouses after the effective date of the 1923 amendment on community property theretofore acquired is subject to testamentary disposition by the wife.

2. That if no portion of such income in the form in which it was originally received by the spouses was subject to testamentary disposition by the wife, then in any event the ''transmutation in form'' of such income, even by mere deposit in a bank account, renders it subject to such disposition.

Plaintiff, on the other hand, contends that the respective rights of the spouses in the income from community property are determined by the law existing at the date of acquisition of the community property which produced such income, and that such rights are unaffected by changes in form of the income after it was received. Well-established propositions of law, and fidelity to constitutional standards, require us to agree with plaintiff.

Counsel for defendant state that they have been unable to find a case in point which construes the ''character of the income from property acquired prior to the effective date of the amendment of 1923,'' but argue that the holdings in *Estate of Phillips* (1928), 203 Cal. 106 [263 P. 1017], and *McKay* v. *Lauriston* (1928), 204 Cal. 557 [269 P. 519], relied upon by plaintiff, are not in point here and are not inconsistent with defendant's contentions. Those cases establish the proposition, admitted by both parties to be the law, that community property acquired prior to 1923 is not sub-

ject to the wife's testamentary disposition, but in neither of them does it appear that the problem of after-acquired income therefrom was involved. However, in the McKay (1928) case, this court made the following statement (at p. 566 of 204 Cal.): "It has been consistently and repeatedly held by this court, beginning with the case of *Spreckels* v. *Spreckels* [1897], reported in 116 Cal. 339 [58 Am.St.Rep. 170, 36 L.R.A. 497, 48 P. 228] down to the cases of recent determination that amendments whereby it was sought to *lessen, enlarge or change in any manner the rights of the respective spouses in community property* will not be given retroactive effect so as to affect the respective rights of the parties in community property acquired prior to the enactment of such amendments [citations]. . . .

"At the time of the purchase of said real property [prior to 1923] the respondent [husband] took the absolute title thereto subject to whatever rights his wife had therein by virtue of the fact that the same was the community property of himself and his wife. This right of his wife was to receive upon the death of her husband, and subject to his debts, one-half of the community property. . . . *Her death, however, prior to that of her husband, made the happening of this contingency impossible and thereupon the entire estate belonged to the husband without administration* (Civ. Code, sec. 1401, prior to its amendment in 1923). *These rights of the respective spouses in the community property attached to the property and were acquired by the parties at the time of the conveyance of the property, and . . . said rights cannot be impaired or destroyed by subsequent legislation.* The courts, as above noted, have uniformly held that any legislation affecting the rights of the parties in such cases will not be given a retroactive construction, but that the law in force at the date of acquisition of the property is determinative of the rights of the parties therein." (Italics added.)

It appears to us that the principle thus enunciated, and reiterated in *Trimble* v. *Trimble* (1933), 219 Cal. 340, 346 [26 P.2d 477], must be determinative of the instant case. At the time of acquisition of the real property from which arose the income here involved, title to such property vested in the husband, subject only to such rights as the wife then held by reason of the fact that it was community property. The rights of the wife at that time did not include the power

of testamentary disposition of the income from community property; that right was in the husband, and, as emphasized in the McKay case, "cannot be impaired or destroyed by subsequent legislation." ▆ Moreover, the husband's rights under the law as it then stood included that of retaining title to and control over the whole of the community property, including the income therefrom, upon the wife's death, and such right could not be divested or impaired by provisions in the wife's will which, if effective, would operate to take from the husband upon her death a portion of either the capital property or accumulations of the income therefrom. To hold otherwise would tend to emasculate "ownership" in one of its most essential attributes: the right of use. The husband's community "ownership" of the capital property would be subject to the *ante* 1923 laws but his right to its *use, i.e., to control and possess the value and proceeds of its use,* would be subject to partial divestment during his lifetime, by the testamentary act of his wife. This would be an unconstitutional impairment of a vested property right (see *George* v. *Ransom* (1860), 15 Cal. 322, 323-324 [76 Am.Dec. 490]). ▆ We are therefore of the opinion that the wife cannot be held to possess now the power of testamentary disposition over the income from community property acquired prior to the effective date of the 1923 amendment of section 1401 of the Civil Code, regardless of when such income accrued or was received by the spouses. (See, also, *Roberts* v. *Wehmeyer* (1923), 191 Cal. 601, 612 [218 P. 22]; *Estate of Drishaus* (1926), 199 Cal. 369, 373 [249 P. 515]; and *Estate of Thornton* (1934), 1 Cal.2d 1, 3 [33 P.2d 1, 92 A.L.R. 1343].)

In the case of *George* v. *Ransom, supra,* the court was considering a statute which provided, among other things, that "the rents and profits of the separate estate of . . . [the] wife shall be deemed common property." The court held (p. 323 of 15 Cal.) : "We think the Legislature has not the Constitutional power to say that the fruits of the property of the wife shall be taken from her, and given to the husband or his creditors. If the Constitutional provision [Const. of 1849, art. XI, sec. 14] be not a protection to the wife against the exercise of this authority, the anomaly would seem to exist, of a right of property in one, divested of all beneficial use—the barren right to hold in the wife, and the beneficial right

to enjoy in the husband. One object of the provision was, to protect the wife against the improvidence of the husband; but this object would wholly fail, in many instances, if the estate of the wife were reduced to a mere reversionary interest,. to be of no avail to her except in the contingency of her surviving her husband.''

The 1849 constitutional provision referred to in the above quotation provided that ''All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterward by gift, devise, or descent, shall be her separate property; and laws shall be passed more clearly defining the rights of the wife in relation as well to her separate property as to that held in common with her husband. . . .'' This section has been succeeded by section 8 of article XX of our present Constitution, which declares that ''All property, real and personal, owned by either husband or wife before marriage, and that acquired by either of them afterwards by gift, devise, or descent, shall be their separate property.'' Definitive of the rights so declared, the Legislature has enacted sections 162 and 163 of the Civil Code, specifying that property of the type described, ''with the rents, issues, and profits thereof,'' shall be the separate property of the respective spouses. ■ There is no constitutional or statutory provision expressly declaring that ''rents, issues, and profits'' of community property shall partake of the same attributes of ownership as the capital property, but such characteristic must follow as a matter of law, because the right of beneficial use is an incident of ownership. The provision of the 1849 Constitution, above quoted, likewise made no specific mention of the ''rents, issues, and profits'' of the separate property of the wife, and the conclusion of the court that the Legislature had no constitutional power ''to say that the fruits of the property of the wife shall be taken from her, and given to the husband or his creditors,'' seems to be sound and worthy of preservation. To hold that the income of property vested in the husband, whether separate or community in tenure, can be taken from him by the Legislature and given to the wife or her testamentary beneficiaries, would be destructive of the principle which it is necessary to maintain if either husband or wife is to be protected in the fruits of his or her separate property. To attempt a distinction on the ground that the property in this

case is community property while in the cited case it was separate property, would be doing homage to names at the sacrifice of principle. By whatever name the tenancy be called, the fact remains that the property of the Waterlands was vested in the husband. He could not be divested of his rights therein without due process of law.

Each party to this appeal asserts that certain statements appearing in the opinion in *Henry* v. *Hibernia Sav. & Loan Soc.* (1935), 5 Cal.App.2d 141, 144 [42 P.2d 395], support his position here. In that case a wife attempted to make a gift to her son of certain community funds in a bank account which stood in her name. Only $500 of community funds had been deposited in the account after the effective date of the 1923 amendment to section 1401 of the Civil Code. The District Court of Appeal, in its discussion of such rights as might exist in the wife to dispose of a portion of the community property acquired since 1923, stated as follows (p. 144 of 5 Cal.App.2d): "All that acquired prior to 1923, *with the increase thereof* represented by the interest paid by the bank, vested in the husband, and that portion the wife did not have the power to devise or give away. [Citations.] . . . To restate the foregoing—none of the community property acquired prior to the 1923 amendment was subject to the testamentary disposition of the wife . . . [Page 145] Upon the authorities above cited it must be evident that the wife had no power of disposition, either by will or gift, of that portion of the fund acquired before the amendment of 1923, *including the profits thereof*. This would limit the question presented to the sum of $500, with interest thereon, acquired after that date. . . ." (Italics added.) The court then affirmed such portions of the judgment as had denied the right of the wife to dispose of any of the community property other than the $500 deposited after the effective date of the 1923 amendment, together with interest thereon. It thus appears that the District Court of Appeal in the Hibernia case was in accord with the views we have expressed hereinabove.

Further support for our views is found in the cases of *Hirsch* v. *United States* (1932, 9 Cir.), 62 F.2d 128, 129, and *Rogan* v. *Delaney* (1940, 9 Cir.), 110 F.2d 336, 337, 339, wherein it was held in connection with problems arising under federal income tax laws that the enactment in 1927 of section 161a of the California Civil Code did not operate to

increase the rights of a wife in income from community property theretofore acquired, regardless of whether such income accrued before or after enactment of the new section. Speaking for the Ninth Circuit Court of Appeals, Judge Wilbur, a former chief justice of this court, said: "It seems too clear for discussion that, if the Legislature of California was powerless to shift the title to a portion of the community property from the husband to the wife, it is equally powerless to change their relationship to income derived from the community property vested in the husband." (*Hirsch* v. *United States* (1932), *supra,* p. 129.)

Defendant's second contention—that a change in form of the income accruing after the 1923 amendment, after such income was received, renders it liable to the wife's testamentary disposition—is answered by application of the principles governing a change in form of separate or community property. It is settled that such a change affects neither the character of the property nor the respective rights of the spouses therein. (See 3 Cal.Jur. Ten Year Supp., 520-522, sec. 38, and cases cited therein; see, also, *Hannah* v. *Swift* (1932, 9 Cir.), 61 F.2d 307, 310.) We perceive no reason why the same rule should not be held to govern their rights in the income accruing from such property, and have been cited to no authority intimating to the contrary.

For the reasons above stated, the judgment is reversed and the trial court is directed to enter judgment in accordance with the views herein expressed.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., and Carter, J., concurred.

TRAYNOR, J.—I concur in the judgment. The decisions that existing statutes changing the rights of husbands and wives in community property can have no retroactive application have become a rule of property in this state and should not now be overruled. It is my opinion, however, that the constitutional theory on which they are based is unsound. (*Warburton* v. *White,* 176 U.S. 484 [20 S.Ct. 404, 44 L.Ed. 555]; *Arnett* v. *Reade,* 220 U.S. 311 [31 S.Ct. 425, 55 L.Ed. 477].) That theory has not become a rule of property and should not invalidate future legislation in this field intended by the Legislature to operate retroactively. (See Johnston,

*Community and Separate Property: Constitutionality of Legislation Decreasing Husband's Power of Control Over Property Already Acquired,* 27 Cal.L.Rev. 49.)