[No. 575.    Decided December 12, 1892.]

## Z. C. MILES COMPANY, *Respondent*, v. W. A. ROBERTSON, *Appellant*.

STOCK AND STOCKHOLDERS — LIABILITY FOR SHARES — NOVATION.

Although a stockholder in a corporation who has given his promissory note in payment of his stock has been released from its payment by the assumption of his indebtedness by certain of the other stockholders, yet, where such stockholder subsequently executes another note to the corporation for the full amount of his stock, and agrees to the release from liability of those who had theretofore

assumed his indebtedness, a contract by novation arises, and such stockholder becomes again liable to the corporation for the amount of his second note.

*Appeal from Superior Court, King County.*

*Stratton, Lewis & Gilman,* for appellant.

*Wiley, Scott & Bostwick,* for respondent.

The opinion of the court was delivered by

DUNBAR, J.— This action was brought by respondent against appellant to recover the sum of five thousand dollars, with interest on a promissory note for that amount made by appellant and payable to the order of respondent, and also to foreclose a pledgee's lien upon fifty shares of the capital stock of the Z. C. Miles Company, which respondent claims was pledged with it as collateral security for the payment of said note. Judgment was rendered in accordance with the prayer of the complaint.

This is in some respects a peculiar case. It seems that in the summer of 1889, Z. C. Miles, one E. C. Callahan, representing the Bridge & Beach Company, appellant Robertson, and others, formed the plaintiff corporation, with a capital stock of fifty thousand dollars, of which Miles subscribed thirty thousand, Callahan ten thousand, Robertson five thousand, and the balance of the stock was taken in various amounts by the other members of the corporation. For the appellant's subscription to the capital stock he gave his note to the corporation for five thousand dollars, bearing interest at six per cent. per annum payable one year after date, and gave his stock as collateral security for the payment of the note.

On the 31st day of October, 1890, a dividend was declared of thirty-six per cent. Appellant contends that this was a dividend on the profits, and respondent that it was a dividend on the capital stock, but that, it seems to us, is

not a material question here.  The dividend was declared, and at that time Miles and Callahan, for reasons that were no doubt satisfactory to themselves, proposed to make Robertson a present of his stock to the extent, at least, of the face of the note which he had pledged as security, and the corporation thereupon gave up to Robertson the five thousand dollar note, he paying the accrued interest, and released him from its payment, and in lieu thereof, at the request of Miles and Callahan, charged Miles on their books with four thousand dollars, and Callahan with one thousand dollars.  This, it is argued by appellant, constituted a complete novation, and there can be no question, we think, of the correctness of that proposition.  The debt was assumed by Miles and Callahan, the corporation consented to release Robertson, and to look to Miles and Callahan for the payment of the debt, and after that was done, Robertson owed the corporation nothing so far as the note was concerned, and his stock was free of any incumbrance.

In the month of March following, however, at a meeting of the stockholders, it was voted to turn the dividend back into the surplus, and at that meeting, by Robertson's consent, Miles and Callahan were credited back with the respective sums of four thousand and one thousand dollars, with which they had been charged October 31st, and Robertson executed a new note for five thousand dollars, which the company accepted in lieu of the debts of Miles and Callahan.  And appellant argues that the new note given by Robertson was without consideration, and that it being an unexecuted promise to pay, without consideration, that it was void and non-collectible.  It seems to us, however, that the acts constituting a novation in the last transaction were as complete as in the first.  It seems from all the testimony in the case that at the time Miles and Callahan so generously offered to liquidate Robertson's indebtedness they thought they could do so out of their proportion of

the dividend, and that when the company decided to return the dividend into the treasury, and they discovered that they would have to pay it out of their outside funds, their generosity began to wane, and it was thought all around that under the circumstances it would be right for Robertson to release them.   This, of course, Robertson was under no more legal obligation to do than were Miles and Callahan in the first instance to assume his debt, but that he did consent to do so seems evident from the testimony.   Mr. Miles swears positively that Robertson gave the note sued on in payment of the stock.   Cathcart, on cross examination, answered as follows:

"Mr. Holland spoke for all of us collectively.   He (referring to Robertson) consented to give that note back for the payment of this fifty shares of stock."

In fact, Robertson himself testifies that he released Miles. He says:

"Then Mr. Holland made the proposition to me if I didn't think I should return the stock to Mr. Miles.   I told him I thought it was asking a good deal.   Then I asked Mr. Miles if he wanted me to do a thing of that kind.   He never answered me.   Mr. Holland says it is not necessary for you to ask him that question, I am putting this question to you.   Well, I thought of course I was in a warm box; but I was willing to do anything that was right to help the old man out, and I gave him my word I would stay with him, and I done it."

On page 47 of the transcript he testifies as follows:

"At the same time and place it was also talked by them that you would have to replace the five thousand dollar note which you had once given for the stock, and which had been taken up with this gift, that entire five thousand dollar note?   Ans. Yes, sir.

"Q. That is, the note which you gave?   A. Yes, sir.

"Q. That note has never been paid?   A. No, sir."

What interest Holland had in the matter is not apparent. He may have thought that Robertson was better security

than Miles and Callahan, or he may have been actuated by pure officiousness. But certain it is that the proposition for Robertson to assume his old position in the company by relieving Miles and Callahan, was made and discussed and agreed to by all the parties concerned, and that in accordance with such agreement Robertson executed his note, which the corporation received, and in consideration of which the obligation of Miles and Callahan was discharged. The right of the company to collect the five thousand dollars from Miles and Callahan prior to the March meeting would not be disputed by any one. The right of the company to collect it from Robertson after the transactions at that meeting rests exactly on the same basis.

Judgment is affirmed.

ANDERS, C. J., and STILES, HOYT and SCOTT, JJ., concur.