# United States Court of Appeals for the Federal Circuit

2006-1269

CRAWFISH PROCESSORS ALLIANCE,
LOUISIANA DEPARTMENT OF AGRICULTURE AND FORESTRY,
and BOB ODOM, COMMISSIONER,

Plaintiffs,

v.

UNITED STATES,

Defendant-Appellee,

v.

HONTEX ENTERPRISES, INC. (doing business as Louisiana Packaging Company),

Defendant,

and

QINGDAO RIRONG FOODSTUFF CO., LTD.
and YANCHENG HAITENG AQUATIC PRODUCTS & FOODS CO., LTD.,

Defendants,

and

BO ASIA, INC.,

Defendant,

and

GRAND NOVA INTERNATIONAL, INC., QINGDAO ZHENGRI SEAFOOD CO., INC.,
and YANGCHENG YAOU SEAFOOD CO.,

Defendants,

and

PACIFIC COAST FISHERIES CORP.,
and FUJIAN PELAGIC FISHERY GROUP CO.,

Defendants-Appellants.

David S. Silverbrand, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee.  With him on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; and Jeanne E. Davidson, Deputy Director.  Of counsel on the brief were John D. McInereney, Chief Counsel; Berniece A. Browne, Senior Counsel; and Marisa Beth Goldstein, Attorney, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of Washington, DC.

William E. Perry, Garvey Schubert Barber LLP, of Washington, DC, argued for defendant-appellants.  With him on the brief was Ronald M. Wisla.

Appealed from:  United States Court of International Trade

Senior Judge Nicholas Tsoucalas

# United States Court of Appeals for the Federal Circuit

2006-1269

CRAWFISH PROCESSORS ALLIANCE,
LOUISIANA DEPARTMENT OF AGRICULTURE AND FORESTRY,
and BOB ODOM, COMMISSIONER,

Plaintiffs,

v.

UNITED STATES,

Defendant-Appellee,

v.

HONTEX ENTERPRISES, INC. (doing business as Louisiana Packing Company),

Defendant,

and

QINGDAO RIRONG FOODSTUFF CO., LTD.
and YANCHENG HAITENG AQUATIC PRODUCTS & FOODS CO., LTD.,

Defendants,

and

BO ASIA, INC.,

Defendant,

and

GRAND NOVA INTERNATIONAL, INC., QINGDAO ZHENGRI SEAFOOD CO., INC.,
and YANGCHENG YAOU SEAFOOD CO.,

Defendants,

and

PACIFIC COAST FISHERIES CORP.,
and FUJIAN PELAGIC FISHERY GROUP CO.,

Defendants-Appellants.

_____

DECIDED: February 27, 2007
_____

Before RADER, Circuit Judge, ARCHER, Senior Circuit Judge, and MOORE, Circuit Judge.

Opinion for the court filed by Circuit Judge RADER. Senior Circuit Judge ARCHER concurs in the result.

RADER, Circuit Judge.

The United States Court of International Trade dismissed Crawfish Processors Alliance v. United States, Consol. Court No. 02-00376, a challenge to the United States Department of Commerce's (Commerce's) final results set out in Notice of Final Results of Antidumping Duty Administrative Review, and Final Partial Recission of Antidumping Duty Administrative Review of Freshwater Crawfish Tail Meat from the People's Republic of China, 67 Fed.Reg. 19,546 (Apr. 22, 2002) (Final Results). Crawfish Processors Alliance v. United States, No. 02-00376, 2005 WL 3578035, at *1 (Dec. 29, 2005) (Dismissal Order). In dismissing the case, among other rulings not appealed to this court, the Court of International Trade sustained Commerce's determination that Fujian Pelagic Fishery Group Co. (Fujian) and Pacific Coast Fisheries Corp. (Pacific Coast) are not affiliated entities under 19 U.S.C. § 1677(33)(E). Crawfish Processors Alliance v. United States, 343 F. Supp. 2d 1242, 1267-68 (Ct. Int'l Trade 2004) (Remand Order). Because Title 19 cannot sustain the Court of International Trade's determination, this court reverses.

I

Fujian, Pacific Coast (incorporated under the laws of the State of Washington), and eight other interested parties initiated a civil action to contest Commerce's antidumping decision in Final Results. The United States assesses antidumping duties on the basis of the "dumping margin." "The term 'dumping margin' means the amount by which the normal value exceeds the export price or constructed export price of the subject merchandise." 19 U.S.C. § 1677(35)(A) (2000). Commerce assesses the "normal value" by using the exporting (home) market price, an appropriate third-country market price, or the constructed value. 19 U.S.C. § 1677b (2000). Commerce assesses the United States price, depending upon the relationships and the location of the sales, according to two alternative statutory methodologies. 19 U.S.C. § 1677a (2000). The "export price" method considers

> the price at which the subject merchandise is first sold (or agreed to be sold) before the date of importation by the producer or exporter of the subject merchandise outside of the United States to an unaffiliated purchaser in the United States or to an unaffiliated purchaser for exportation to the United States.

19 U.S.C. § 1677a(a) (2000) (emphases added). The "constructed export price" method considers

> the price at which the subject merchandise is first sold (or agreed to be sold) in the United States before or after the date of importation by or for the account of the producer or exporter of such merchandise or by a seller affiliated with the producer or exporter, to a purchaser not affiliated with the producer or exporter.

19 U.S.C. § 1677a(b) (2000) (emphases added). In choosing between these methods, Commerce must consider any affiliation between the parties. The determination of affiliation is the central issue of this appeal.

II

Commerce determined that Fujian and Pacific Coast were not affiliated. The record shows that Fujian owned and exercised more than 5% of Pacific Coast's public shares during the period of review, an amount sufficient to establish affiliation. Remand Order at 1267. Pacific Coast issued the public shares to Fujian under the laws of the State of Washington. Nonetheless, Commerce discounted the evidence of ownership because the record showed no evidence of Fujian making a transfer of cash or merchandise into Pacific Coast. In response to Commerce's request for documentation, Fujian submitted a promissory note committing it to pay the stock price in merchandise and documents showing satisfaction of approximately half of that price in a single transaction with a seafood broker, MISB, Inc. According to Commerce, Fujian's documentation did not show that the merchandise, which was to serve as Fujian's investment in Pacific Coast, originated from Fujian. The documentation also did not indicate when the merchandise at issue entered into the United States. Alternatively, Commerce also determined that if Fujian did acquire a portion of Pacific Coast's equity during the review period, it was less than 5%.

Without a finding of affiliation, Fujian received an antidumping margin of 173.60% on sales to Pacific Coast. This antidumping margin reflected a price from Fujian to Pacific Coast at a rate below the market rate per pound. Fujian and Pacific Coast assert that if Pacific Coast's sales price to United States buyers had been considered

the first unaffiliated sale (and not the sales price from Fujian to Pacific Coast), that the starting point transfer price would have been more in line with market rates. Thus, Fujian and Pacific Coast initiated a civil action in the Court of International Trade to challenge Commerce's affiliation determination.

The Court of International Trade affirmed Commerce's decision that Fujian and Pacific Coast were not affiliated. Remand Order at 1267-68. In its Remand Order, the Court of International Trade held that "Commerce properly determined that Fujian and Pacific Coast are not affiliated parties under the relevant statutes" because "Fujian had not made an investment, whether in cash or in the form of a promissory note, in Pacific Coast" and because "Fujian did not exercise control over Pacific Coast." Id. at 1269. The Court of International Trade agreed with Commerce that "Fujian's submissions . . . do not sufficiently demonstrate that the merchandise sold by Pacific Coast originated from Fujian." Id. at 1268.

However, the Court of International Trade did not enter a final order at that time, but remanded the case for further consideration on issues not appealed to this court. Again, in September of 2005, the Court of International Trade affirmed Commerce's first remand results, but remanded a second time. Crawfish Processors Alliance v. United States, 395 F. Supp. 2d 1330 (Ct. Int'l Trade 2005). On December 29, 2005, the Court of International Trade affirmed Commerce's second remand results. Dismissal Order, 2005 WL 3578035, at *1. Fujian and Pacific Coast filed a timely appeal to this court.

The standard for affiliation involves a question of statutory interpretation. In interpreting the statute, this court seeks first the unambiguous meaning of the language. Int'l Bus. Mach. Corp. v. United States, 201 F.3d 1367, 1372 (Fed. Cir. 2000) (citing Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997) ("Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent." (quoting United States v. Ron Pair Enters., Inc., 489 U.S. 235, 240 (1989))). To detect any ambiguity, this court looks at "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Robinson, 519 U.S. at 341. The statute defines "affiliated":

> The following persons shall be considered to be "affiliated" or "affiliated persons":
>
>   *   *   *   *
>
> (E) Any person directly or indirectly owning, controlling, or holding with power to vote, 5 percent or more of the outstanding voting stock or shares of any organization and such organization.
>
>   *   *   *   *
>
> For purposes of this paragraph, a person shall be considered to control another person if the person is legally or operationally in a position to exercise restraint or direction over the other person.

19 U.S.C. § 1677(33) (2000) (emphasis added). Commerce regulations provide further information about affiliated parties:

> "Affiliated persons" and "affiliated parties" have the same meaning as in section 771(33) of the Act. In determining whether control over another person exists, within the meaning of section 771(33) of the Act, the

> Secretary will consider the following factors, among others: <u>corporate or family groupings</u>; <u>franchise or joint venture agreements</u>; <u>debt financing</u>; and <u>close supplier relationships</u>. . . . The Secretary will consider the temporal aspect of a relationship in determining whether control exists; normally, temporary circumstances will not suffice as evidence of control.

19 C.F.R. § 351.102(b) (2006) (emphasis added). While aspects of this regulation do not speak directly to subparagraph (E) of section 1677(33), this court views its language as instructive on the meaning of "control" and "affiliated parties" under the statute. In fact, the Government has argued the applicability of 19 C.F.R. § 351.102(b) to this court.

The statute clarifies, in quite broad terms, that owning, controlling, or holding, "directly or indirectly," over 5% of an entity's stock constitutes "affiliation." This court detects no ambiguity in that standard. The regulation stipulates that the affiliation determination considers, among other factors, debt financing, family groupings, and close supplier relationships.

Commerce interprets the statute to require the transfer of cash or merchandise to show direct or indirect ownership of 5% or more of the shares of an organization. The statute has no such requirement. Nonetheless, Commerce asks this court to defer to its interpretation. The Supreme Court direction on deference in <u>Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837 (1984), does not limit deference to formal agency rulemaking or adjudication. Nonetheless, the Supreme Court has clarified that an interpretation advanced in the course of litigation without indicia of a considered agency policy cannot carry the "force of law." <u>United States v. Mead Corp.</u>, 533 U.S. 218, 226-27 (2001); <u>see also</u> <u>Bowen v. Georgetown Univ. Hosp.</u>, 488 U.S. 204, 212-13 (1988) ("We have never applied [<u>Chevron</u> deference] to agency litigating positions that

are wholly unsupported by regulations, rulings, or administrative practice . . . . Congress has delegated to the administrative official and not to appellate counsel . . . ." (internal quotation marks omitted)).

This case does not warrant unbridled Chevron deference. The Supreme Court counsels that deference may "vary with circumstances." Mead Corp., 533 U.S. 228; see also Cathedral Candle Co. v. Int'l Trade Comm'n, 400 F.3d 1352, 1366 (Fed. Cir. 2005) ("[W]e believe the Supreme Court intends for us to defer to an agency interpretation of the statute that it administers if the agency has conducted a careful analysis of the statutory issue, if the agency's position has been consistent and reflects agency-wide policy, and if the agency's position constitutes a reasonable conclusion as to the proper construction of the statute, even if we might not have adopted that construction without the benefit of the agency's analysis."). Specifically, "courts have looked to the degree of the agency's care, its consistency, formality, and relative expertise, and to the persuasiveness of the agency's position." Id. The United States' contention that the statute requires proof of a transfer of cash or merchandise to show affiliation has none of those characteristics.

To prove affiliation, neither the statute nor the regulations require evidence of the transfer of cash or merchandise to prove that a person directly or indirectly owns at least 5% of an organization's shares. Likewise, neither the statute nor the regulations require the transfer of cash or merchandise to show that a person holds, with power to vote, 5% or more of the outstanding voting stock of an organization. Indeed, the regulation associated with the statute states that evidence of "control," and thus "affiliation" can be in the form of "corporate or family groupings; franchise or joint

venture agreements; debt financing; and close supplier relationships." 19 C.F.R. § 351.102(b) (2006).

Again, neither the statute nor the regulation requires a transfer of cash or merchandise. Moreover, the regulation contemplates "agreements," "groupings," "debt financing," and "close supplier relationships." Thus, when requiring Fujian and Pacific Coast to provide evidence that "the merchandise sold by Pacific Coast originated from Fujian," Remand Order at 1268, Commerce made demands beyond the requirements of the statute. In addition, when demanding that Fujian and Pacific Coast provide documentation that "ties [the sale from Pacific Coast to the seafood broker] to the shipment from Fujian Pelagic that purportedly represents Fujian Pelagic's investment in Pacific Coast," id., Commerce also demanded documentation that neither the statute nor the regulations require. Nothing in the statute requires proof of the sale of merchandise or a transfer of cash to prove an at least 5% ownership of an organization's shares.

Of course, Fujian must show direct or indirect ownership or control of the required amount of Pacific Coast's stock, but neither the statute nor the regulation specifies the exact nature of that proof. Instead, the statute and the regulation contemplate a wide range of ways to show ownership or control, including "agreements; debt financing; and close supplier relationships."

The United States alternatively argues that if the record shows ownership of at least 5% of Pacific Coast's shares, that Fujian nevertheless did not make a full payment for those shares during the review period. Once again, the requirement of payment during the review period finds no support in either 19 U.S.C. § 1677(33) or 19 C.F.R. §

351.102(b). The statute imposes no time requirement on financial transactions showing affiliation. The only time factor mentioned in the regulation concerns the length of time two parties have had a relationship or agreement. Commerce evaluates an importer and imported goods during a specific time period, but this period does not limit proof of affiliation. To accept this limitation as a statutory or regulatory requirement would also require acceptance of the erroneous premise that the statute requires a merchandise or cash transfer at all. Again, because the statute does not require proof of transfer of merchandise or cash between supposed affiliates as the only way to prove ownership or control of at least a 5% ownership of shares, the statute also does not limit those transactions to the period of review.

Furthermore, under the laws of the State of Washington where Pacific Coast issued the stock to Fujian, the transfer to a corporation of property in exchange for stock of the corporation is valid payment for the stock. Kennedy v. Norton, 157 P. 684 (Wash. 1916). Since the statute does not include specific methods to show the purchase of stock, this court looks to the laws of the state of incorporation to show acceptable methods. Under the law of the State of Washington, a promissory note suffices to purchase stock or shares of a corporation. Z. C. Miles Co. v. Robertson, 31 P. 970, 971 (Wash. 1892). Indeed, Wash. Bus. Corp. Act § 23B.06.210(2) states that "[s]hares may be issued for consideration consisting of any tangible or intangible property or benefit to the corporation, including cash, promissory notes, services performed, contracts for services to be performed, or other securities of the corporation." (emphases added).

Moreover, under the Uniform Commercial Code, § 8-302(a),[1] upon delivery of the certificated security, not full payment of the shares, the purchaser of a certificated security acquires the transferor's rights in the security. Delivery occurs when the purchaser acquires possession of the security certificate, or another person, other than a securities intermediary, either acquires possession of the security certificate on behalf of the purchaser or, having previously acquired possession of the certificate, acknowledges that it holds for the purchaser. See U.C.C. § 8-301(a)(1)-(2) (1999). A "certificated security" means a security that is represented by a certificate, as are the shares Fujian purchased from Pacific Coast. U.C.C. § 8-102(a)(4) (1999).

Additionally, in Rogan v. Delaney, 110 F.2d 336 (9th Cir. 1940), the court held that shares purchased with loaned money does not delay the transfer of ownership of the shares until repayment of the loan. Although Rogan involved the assessment of taxable income, the issue of the ownership, title, and control of the shares is the same as in this case. Before the purchaser repaid the loan, the lenders recognized him as the owner of the 1,100 shares. Id. The Ninth Circuit found that "repayment [of the loan] did not, as the trial court supposed, constitute a purchase of the shares. It was merely the payment of a debt. Acquisition of the shares did not await or depend on repayment of the loans." Id. at 339. Thus, applying 19 U.S.C. § 1677(33), 19 C.F.R. § 351.102(b), Washington state law, the Uniform Commercial Code, and common law, full title and ownership of the shares transferred to Fujian upon receipt of the stock certificate with payment secured by a promissory note.

---

[1] The state of Washington has adopted the cited versions of the U.C.C.

However, for the proposition that it can make its own determinations of "affiliation" on the basis of 19 U.S.C. § 1677(33)(E), without reference to state or foreign law, the United States cites Nuove Industrie Elettriche di Legnano S.p.A. v. United States, 739 F.Supp. 1567, 1574 (Ct. Int'l Trade 1990), and Toho Titanium Co. v. United States, 743 F. Supp. 888, 892 (Ct. Int'l Trade 1990). These cases, though, do not support its flawed interpretation of the statute, which does not require evidence of a cash or merchandise transfer between a "person" and organization to show ownership or control.

Thus, Commerce and the Court of International Trade erred in their interpretation of 19 U.S.C. § 1677(33) and 19 C.F.R. § 351.102(b). Neither the statute nor the regulation requires proof of a transfer of cash or merchandise to prove at least a 5% stock ownership for affiliation.

IV

Therefore, this court must then also determine whether substantial evidence supports Commerce's and the Court of International Trade's determination that Fujian and Pacific Coast are not affiliates. This court reviews a decision by the Court of International Trade de novo, applying to Commerce's determination the same standard of review as the Court of International Trade. PPG Indus., Inc. v. United States, 978 F.2d 1232, 1236 (Fed. Cir. 1992). Commerce's determinations shall be affirmed when supported by substantial evidence and otherwise in accordance with law. 19 U.S.C. § 1516a(b)(I)(B)(i) (2000); see also Micron Tech., Inc. v. United States, 243 F.3d 1301, 1307-08 (Fed. Cir. 2001). In light of the correct interpretation of the applicable statute

and regulation set forth in this opinion, substantial evidence does not support Commerce's determination that Fujian and Pacific Coast are not affiliated.

By providing Commerce with a copy of its Washington State stock certificate, a copy of Pacific Coast's articles of incorporation, and a copy of the promissory note, Fujian and Pacific Coast provided ample evidence that Fujian "directly or indirectly" owned, controlled, or held 5% or more of the outstanding voting stock or shares of Pacific Coast. Moreover, the corporate or family groupings between Fujian and Pacific Coast, the debt financing from Pacific Coast to Fujian, and a close supplier relationship between Fujian and Pacific Coast verified that affiliation.

Pacific Coast's articles of incorporation show that Fujian Pelagic applied to purchase these shares. Fujian and Pacific Coast presented a Certificate of Incorporation dated July 20, 1999, that showed Fujian in possession of sufficient shares of Pacific Coast. In fact, the record shows that Fujian directly owned or controlled over 5% of the outstanding common shares of Pacific Coast. This showing meets two of the statutory thresholds for proof of "affiliation": directly owning or controlling at least 5% of the shares. Furthermore, the United States has not asserted that the common shares of Pacific Coast that Fujian owned were not also voting shares. Accordingly, the record supports a showing that Fujian held and exercised voting shares, a third threshold for proof of "affiliation." This satisfies the statute's requirement that Fujian will directly or indirectly own or control, or hold with the power to vote, 5% of the stock of Pacific Coast.

The promissory note shows that Fujian will pay for the shares through merchandise. Fujian and Pacific Coast also provided a copy of a promissory note dated

August 1, 1999, in which Fujian agreed, within two years, to pay in the form of merchandise, the total purchase price of the Pacific Coast shares. This promissory note is further proof that Pacific Coast transferred ownership of more than 5% of Pacific Coast's shares to Fujian, and that Fujian controlled more than 5% of Pacific Coast's shares. This satisfies the regulation's interpretation of the statute that identifies a corporate or family groupings, debt financing, and a close supplier relationship between Fujian and Pacific Coast as factors that show affiliation.

The Washington stock certificate identifies Fujian Pelagic as becoming the owner of the shares of common stock in Pacific Coast on August 28, 1997. This satisfies the statute's requirement that Fujian's possession of the stock certificate proves that it directly owns and controls more than 5% of the stock of Pacific Coast, as of August 28, 1997.

The United States argues that the promissory note and evidence of a Memorandum of Understanding dated March 1, 2000 (Memorandum) proves that the transfer of ownership of Pacific Coasts shares to Fujian did not occur because Fujian did not make a full payment for those shares during the review period. The Memorandum states that Fujian made an initial payment for the shares in the form of merchandise valued at about half their value. Thus, this transfer of merchandise would have paid for nearly 5% of Pacific Coast's total shares. Although Fujian made no other payments during the review period, the promissory note did not come due until after the review period ended. Hence, Fujian was under no obligation to make payment during the review period. Even if Fujian was required to make additional payments, the record shows that Pacific Coast amended its Articles of Incorporation (Amendment) to make

this initial payment account for more than 5% of those shares. While this Amendment decreased the purchase price of Pacific Coast's shares, this evidence is irrelevant. As noted, the statute does not require a transfer of cash or merchandise to prove ownership or control of an organization's shares. The evidence Fujian and Pacific Coast presented was sufficient to prove they are "affiliated" for purposes of 19 U.S.C. § 1677(33)(E).

V

In conclusion, this court reverses the Court of International Trade's and Commerce's determination that 19 U.S.C. § 1677(33)(E) requires proof of full payment in cash or merchandise during the review period to show affiliation. This court also reverses the Court of International Trade's and Commerce's determination that Fujian and Pacific Coast are not affiliated under 19 U.S.C. § 1677(33)(E). Fujian and Pacific Coast have presented sufficient evidence to show that Fujian directly or indirectly owns at least 5% of Pacific Coast's shares.

<u>REVERSED</u>

<u>Senior Circuit Judge</u> ARCHER concurs in the result.