Slip Op. 08-38

UNITED STATES COURT OF INTERNATIONAL TRADE

```
                                  :
JINFU TRADING CO., LTD.,          :
                                  :
            Plaintiff,            :
                                  :
     v.                           :
                                  : Before: Richard K. Eaton, Judge
UNITED STATES,                    :
                                  : Court No. 04-00597
            Defendant,            :
                                  :
     and                          :
                                  :
AMERICAN HONEY PRODUCERS          :
ASSOCIATION and SIOUX HONEY       :
ASSOCIATION,                      :
                                  :
            Def.-Ints.            :
                                  :
```

OPINION

[United States Department of Commerce's final results rescinding plaintiff's new shipper review sustained.]

Dated: April 4, 2008

*Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP* (*Bruce M. Mitchell*, *Ned H. Marshak*, and *Elaine F. Wang*), for plaintiff.

*Jeffrey S. Bucholtz*, Acting Assistant Attorney General; *Jeanne E. Davidson*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; *Reginald T. Blades Jr.*, Assistant Director, International Trade Section, Commercial Litigation Branch, Civil Division, United States Department of Justice; *Jane C. Dempsey*, Attorney, U.S. Department of Justice, Civil Division, Commercial Litigation Branch; Office of the Chief Counsel, Import Administration, United States Department of Commerce (*Mildred E. Steward*), of counsel, for defendant.

*Kelley Drye Collier Shannon* (*Michael J. Coursey* and *R. Alan Luberda*), for defendant-intervenors.

Eaton, Judge:  Before the court are the United States Department of Commerce's ("Commerce" or the "Department") final results of its remand redetermination pursuant to the court's order in *Jinfu Trading Co., Ltd. v. United States*, 31 CIT __, Slip Op. 07-95 (June 13, 2007) (not reported in the Federal Supplement) ("*Jinfu II*"), and the comments of plaintiff Jinfu Trading Co., Ltd. ("Jinfu PRC"), and defendant-intervenors American Honey Producers Association and Sioux Honey Association responsive thereto.  *See* Final Results of Redetermination Pursuant to Court Remand (Dep't of Commerce Oct. 9, 2007) ("Remand Redetermination"); Pl.'s Comments Remand Redetermination ("Pl.'s Comments"); Def.-Ints.' Resp. to Remand Redetermination ("Def.-Ints.' Resp.").

The central issue in this litigation is whether Jinfu PRC was affiliated with either Yousheng Trading (U.S.A.) Co., Ltd. ("Yousheng USA") or its successor Jinfu Trading (U.S.A.) Co., Ltd. ("Jinfu USA")[1] on or before November 2, 2002.[2]  Plaintiff

---

[1] For purposes of confidentiality, the court will employ the same shorthand references used in *Jinfu II*.  Specifically, Jinfu USA's sole employee is referred to as "Mr. A"; the chief executive officer of Jinfu PRC as "CEO B"; the unaffiliated United States buyer as "Customer C"; and the original owner of what was then Yousheng USA as "Mr. D."  The attorney retained in October 2002 to aid in the purported transfer of ownership of Yousheng USA/Jinfu USA to CEO B is referred to as "Attorney E."

[2] Yousheng USA was incorporated on October 4, 2002, in Washington State, and renamed Jinfu USA on November 12, 2002. Therefore, to avoid any confusion, the court will refer to the

(continued...)

has maintained that CEO B wholly owned Yousheng USA/Jinfu USA by November 2, 2002, or, in the alternative, that CEO B exercised operational control over Yousheng USA/Jinfu USA prior to that date.

In *Jinfu Trading Co., Ltd. v. United States*, 30 CIT __, Slip Op. 06-137 (Sept. 7, 2006) (not reported in the Federal Supplement) *("Jinfu I")*, the court considered whether Commerce's determination that Jinfu PRC was not affiliated—through either ownership or control—with Yousheng USA/Jinfu USA on November 2, 2002 was supported by substantial evidence.  The court sustained the Department's finding on the issue of ownership, but remanded on the issue of control.  *See Jinfu I*, 30 CIT at __, Slip Op. 06-137 at 25, 32-33.

On remand, Commerce again determined that CEO B did not control Yousheng USA/Jinfu USA at the relevant time.  *See* Final Results of Redetermination Pursuant to Remand (Dep't of Commerce Dec. 5, 2006) ("First Remand Redetermination").  Plaintiff challenged this determination, and in *Jinfu II*, the court remanded Commerce's decision for the second time.  *See generally Jinfu II*, 31 CIT at __, Slip Op. 07-95 at 9-23.  The court found

[2](...continued)
entity incorporated as Yousheng USA and subsequently renamed Jinfu USA as "Yousheng USA/Jinfu USA," except where it is necessary to distinguish these entities' sequential existence. *See Jinfu Trading Co., Ltd. v. United States*, 30 CIT __, __, Slip Op. 06-137 at 2 n.2 (Sept. 7, 2006) (not reported in the Federal Supplement).

that Commerce's conclusions were not supported by substantial evidence because of its failure to fully explain the evidence on the record relating to the issue of control.  Therefore, on remand, Commerce was directed to: (1) consider the court's opinion and provide an explanation as to why the contents of certain faxes between Mr. A and CEO B, if credible and reliable, did not support a conclusion that CEO B controlled Yousheng USA/Jinfu USA; and (2) reopen the record to allow plaintiff to place evidence on the record concerning the issue of affiliation. *See Jinfu II*, 31 CIT at __, Slip Op. 07-95 at 24.  Specifically, plaintiff was provided with an opportunity to submit evidence concerning the authenticity of the disputed faxes, CEO B's involvement in Customer C's pre-payment of the sales price for the claimed new shipper sale, and the facts behind Mr. A's obtaining a loan from Customer C to finance Yousheng USA/Jinfu USA transactions.  *Id.* at __, Slip Op. 07-95 at 24.

On remand, Commerce reopened the record; plaintiff, however, declined to present any new evidence.  *See* Remand Redetermination at 2.  Commerce now offers two independent reasons for its determination that CEO B did not control Yousheng USA/Jinfu USA: (1) plaintiff is unable to establish that the faxes are authentic; and (2) the record evidence clearly demonstrates Mr. A's independence in managing Yousheng USA/Jinfu USA.  *See* Def.'s Resp. Jinfu's Comments Regarding Remand Redetermination ("Def.'s

Resp.") 7-12.  Jurisdiction lies pursuant to 28 U.S.C. § 1581(c) (2000) and 19 U.S.C. § 1516a(a)(2)(B)(iii).  For the following reasons, the Department's Remand Redetermination is sustained.

BACKGROUND

The facts of this matter are contained in *Jinfu I* and *Jinfu II*.  The court now sets forth only those facts relevant to this opinion.

Plaintiff seeks judicial review of the Department's rescission of its new shipper review for entries of honey from the People's Republic of China ("PRC").[3]  *See* Honey from the PRC, 69 Fed. Reg. 64,029 (Dep't of Commerce Nov. 3, 2004) (notice of final results and final rescission, in part).  Plaintiff sought the new shipper review based on a transaction that took place on November 2, 2002.  On that date, Yousheng USA/Jinfu USA consummated a sale of honey, acquired from Jinfu PRC, to Customer C.  Plaintiff contends that, because Yousheng USA/Jinfu USA and Jinfu PRC were affiliated when the sale took place, the

---

[3]  A "new shipper review" involves a shipper that has not previously exported particular subject merchandise, and thus has been described as a proceeding where "Commerce is essentially conducting a new antidumping review that is specific to a particular producer [or exporter]."  *Tianjin Tiancheng Pharm. Co., Ltd. v. United States*, 29 CIT __, __, 366 F. Supp. 2d 1246, 1249 (2005).

transaction constituted a new shipper sale.[4]

In its analysis, Commerce is guided by 19 C.F.R. § 351.214(b)(2)(iv)(C), which provides that a party seeking a new shipper review must produce "[d]ocumentation establishing . . . [t]he date of the first sale to an unaffiliated customer in the United States . . . ."  Before Commerce, plaintiff submitted documentation to support its claim that the new shipper sale was made by Jinfu PRC (via Yousheng USA/Jinfu USA) to Customer C on November 2, 2002.  Based on that documentation, Commerce initiated the new shipper review.  Upon concluding that the documentation was insufficient to establish that Jinfu PRC was affiliated with Yousheng USA/Jinfu USA as of that date, however, Commerce rescinded the review.  The Department took this action because, absent affiliation, the sale to Customer C could not be considered a sale by Jinfu PRC to Customer C.  *Jinfu I*, 30 CIT at __, Slip Op. 06-137 at 9-11.

In *Jinfu I*, plaintiff insisted that Commerce erred when it concluded that CEO B did not own or control Yousheng USA/Jinfu USA on November 2, 2002.  After reviewing the evidence, the court

---

[4] The question of affiliation is governed by 19 U.S.C. § 1677(33).  The statute provides, in relevant part, that the following persons are deemed "affiliated": (E) "Any person directly or indirectly owning [at least 5% of the voting shares of a company]"; (F) "Two or more persons directly or indirectly controlling, controlled by, or under common control with, any person"; and, (G) "Any person who controls any person and such other person."  19 U.S.C. § 1677(33).

agreed with Commerce that plaintiff had not established ownership of Yousheng USA/Jinfu USA on the sale date.  *See Jinfu I*, 30 CIT at __, Slip Op. 06-137 at 25.  The court, however, was unconvinced by Commerce's analysis on the issue of control in light of Commerce's failure to address record evidence that appeared to demonstrate "that CEO B not only had the potential to influence what was then Yousheng USA's pricing decisions, but, in fact, exercised that control . . . ."  *See id.* at __, Slip Op. 06-137 at 28.  The court was particularly concerned that Commerce had not explained why it did not find affiliation based on an exchange of faxes by which CEO B apparently authorized Mr. A to consummate the relevant sale with Customer C.  *See id.* at __, Slip Op. 06-137 at 28-31.  In remanding the matter to Commerce, however, the *Jinfu I* Court did not direct Commerce to find that Jinfu PRC and Yousheng USA were affiliated (by virtue of control).  Instead, *Jinfu I* instructed Commerce, if it did not concur with the court's findings, to "reopen the record to provide plaintiff with an opportunity to . . . [submit] further evidence with respect to affiliation and provide an explanation of that evidence."  *See id.* at __, Slip Op. 06-137 at 32-33.[5]

---

[5] In determining affiliation, Commerce is guided by its regulations, promulgated under 19 U.S.C. § 1677(33), which provide, in relevant part, that "[Commerce] will not find that control exists . . . unless the relationship has the potential to impact decisions concerning the production, pricing, or cost of the subject merchandise."  19 C.F.R. § 351.102(b).

After this court's initial remand, plaintiff submitted additional evidence to Commerce concerning both the purported purchase and affiliation.  *See generally Jinfu II*, 31 CIT at __, Slip Op. 07-95 at 15.  Following consideration of plaintiff's new submissions, Commerce again found that "the record [did] not support a finding that CEO B had control over Mr. A's business decisions, particularly those dealing with pricing."  *Id.* at __, Slip Op. 07-95 at 9 (citations omitted).

Plaintiff then sought a further remand arguing that the record evidence established CEO B's control of Yousheng USA/Jinfu USA at the relevant time.  Plaintiff also claimed that Commerce made a procedural error in issuing its redetermination without giving plaintiff the opportunity to address the authenticity of the faxes, and Mr. A's apparent independence in dealing with Customer C.  *See id.* at __, Slip Op. 07-95 at 19.

Because the authenticity (distinct from the probative value) of the faxes, and the circumstances surrounding Mr. A's business decisions, were first raised in Commerce's draft remand redetermination, the court remanded the matter again.  *See id.* at __, Slip Op. 07-95 at 22-23.  The court issued this remand, in part, because plaintiff had no notice of the prominent role that the authenticity of the faxes would play in Commerce's decision until after the record was closed.  *See id.* at __, Slip Op. 07-95 at 21-23.  The court instructed Commerce to: (1) reopen the

record to allow plaintiff to submit new evidence demonstrating the authenticity of the faxes and the circumstances surrounding Mr. A's business decisions regarding Customer C; and (2) explain why, if the faxes were shown to be genuine, they would not demonstrate that CEO B had control over Yousheng USA/Jinfu USA's pricing decisions. *Id.* at __, Slip Op. 07-95 at 24.

In its second Remand Redetermination, Commerce reaffirmed its earlier determination and further explained its conclusion that CEO B did not control Yousheng USA/Jinfu USA at the relevant time. Remand Redetermination at 13. Specifically, Commerce found that Mr. A routinely made unilateral decisions affecting Yousheng USA/Jinfu USA, that there is no undisputed evidence of CEO B ever exerting authority over Mr. A, that the faxes' authenticity had not been demonstrated, and that, even if shown to be genuine, they would not evidence CEO B's control. *See* Def.'s Resp. 7-11 (citations omitted). Although Commerce gave plaintiff the opportunity to dispute its conclusions with additional evidence, plaintiff declined to do so. Remand Redetermination at 2. Rather, before this court, plaintiff reargues the issues of ownership and control, by highlighting the same evidence it previously addressed and by bringing to the attention of the court a recent decision of the Court of Appeals for the Federal Circuit (the "Federal Circuit"). Pl.'s Comments 10-19.

STANDARD OF REVIEW

The court reviews Commerce's Remand Redetermination under the substantial evidence test.  *See* 19 U.S.C. § 1516a(b)(1)(B)(i) ("The court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Huaiyin Foreign Trade Corp. (30) v. United States*, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The possibility of drawing two inconsistent conclusions from the record will not prevent the agency determination from being supported by substantial evidence.  *See Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

Accordingly, the question before the court is not whether the court agrees with the determination made by Commerce.  *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006).  Rather, the court "must affirm [the Department's] determination if it is reasonable and supported by the record as a whole, even if some evidence detracts from the [Department's] conclusion."  *Id.* (citations omitted).

DISCUSSION

There are two main issues presently before the court.

First, the court must determine whether Commerce has adequately explained and supported with substantial evidence its finding that the faxes do not demonstrate CEO B's control over Yousheng USA/Jinfu USA as of November 2, 2002.  Second, at plaintiff's request, the court will reconsider its previous holding on the issue of ownership in light of the Federal Circuit's recent decision in *Crawfish Processors Alliance v. United States*, 477 F.3d 1375 (Fed. Cir. 2007).

   I.   Commerce's Determination That CEO B Did Not Exercise
        Control Over Yousheng USA/Jinfu USA Is Sustained

In *Jinfu II*, the court remanded this matter to Commerce with instructions to "provide an explanation as to why the contents of the faxes exchanged between Mr. A and CEO B, if credible and reliable, do not support a conclusion that CEO B controlled Jinfu USA."  *Jinfu II*, 31 CIT at __, Slip Op. 07-95 at 24.  In addressing this instruction, Commerce relies heavily on the credibility and reliability of the faxes.  Thus, Commerce questions the faxes' authenticity and further concludes that the remaining evidence on the record, viewed in light of the plaintiff's overall credibility, does not support the conclusion that CEO B influenced Yousheng USA/Jinfu USA's pricing decisions. Remand Redetermination at 7-8.

Commerce offers several reasons for doubting the faxes' authenticity.  First, the faxes lack the type of data that,

according to Commerce, would normally indicate the date and time of transmission.  *See* Def.'s Resp. 9 (citing Remand Redetermination at 8).  In addition, although given the opportunity to do so, plaintiff has not supplied a log entry or date stamp for these faxes.  For Commerce, the absence of any of this evidence makes it impossible to conclude that they were sent at all, or that they were sent at the time plaintiff claims.  *See* Remand Redetermination at 8.  Notably, despite having sought the opportunity to submit additional evidence of the faxes' authenticity, plaintiff now asserts that "additional evidence is not necessary at this time."  Pl.'s Comments 15.

For their part, defendant-intervenors note that other faxes sent by Mr. A contain the information line "showing his name and the date and time the facsimile was sent."  *See* Def.-Ints.' Resp. 4 (citing Letter from Jinfu PRC to Commerce, Oct. 23, 2006, at Ex. 22).  Defendant-intervenors also note that the faxes at issue were not provided to Commerce until late in the review process and suggest that this untimeliness raises "the possibility that the document was created after the fact for purposes of the second review."  *See* Def.-Ints.' Resp. 4-5.  They further suggest that this explains plaintiff's failure to capitalize on the opportunity to supply additional evidence authenticating the faxes.  *See* Def.-Ints.' Resp. 4-5.

Further, Commerce insists that plaintiff's submission of

backdated documentation earlier in the investigation undermines its credibility.  *See* First Remand Redetermination at 10. Commerce notes that, as part of its efforts to document that CEO B owned Yousheng USA/Jinfu USA on November 2, 2002, plaintiff submitted a backdated Certificate of Transfer of Shares, along with supporting documentation, including amended articles of incorporation and by-laws, and a receipt for legal services preparing these documents, all of which were described by Commerce as having "credibility problems."  *See Jinfu II*, 31 CIT at __, Slip Op. 07-95 at 10 n. 6 (citations omitted); *see also* Issues and Decision Memorandum for the Final Results and Final Rescission, In Part, of the New Shipper Review of the Antidumping Duty Order on Honey from the PRC (Dep't of Commerce Oct. 25, 2004) Comments 1 and 2.  For Commerce, this behavior is reflective of plaintiff's overall credibility and sufficient to call into question the authenticity of the faxes, particularly when there is no other evidence indicating that they were sent on the date plaintiff claims or indeed that they were sent at all. *See Jinfu II*, 31 CIT at __, Slip Op. 07-95 at 10 n. 6.

Commerce also argues that the nature of the relationship between Mr. A and CEO B suggests that CEO B did not exercise operational control over Yousheng USA/Jinfu USA prior to November 2, 2002.  *See* Def.'s Resp. 9-10.  In fact, apart from Mr. A's statements in his affidavit, the only documented authorization of

any action taken by Mr. A is the disputed exchange of faxes.  *See Jinfu II*, 31 CIT at \_\_, Slip Op. 07-95 at 15.  On the other hand, it is undisputed that Mr. A negotiated the price and terms of the relevant sale with Customer C without the involvement of CEO B, and that the merchandise was already in transit to Customer C's end-user at the time that the faxes were supposedly exchanged.  *See* Def.'s Resp. 8-9.  In addition, Mr. A appears to have accepted partial pre-payment of the relevant shipment and arranged a loan from Customer C to Yousheng USA/Jinfu USA without CEO B's approval.  *See Jinfu II*, 31 CIT at \_\_, Slip Op. 07-95  at 12-13.  Commerce interprets these facts to mean that the transaction was already finalized when the faxes were purportedly sent.  From this conclusion, according to Commerce, it follows that Mr. A acted unilaterally and without authorization when making business decisions in consummating the sale.  Def.'s Resp. 8-9.

As noted, despite being given the opportunity to do so, plaintiff has failed to offer any evidence demonstrating when the faxes were sent or whether they were sent at all.  Commerce, then, was not unreasonable in questioning the authenticity given the timing of the submission and plaintiff's previous submission of fraudulent documentation in this matter.  *See U.S. Steel Group v. United States*, 96 F.3d 1352, 1357 (Fed. Cir. 1996) ("It is the [Department's] task to evaluate the evidence it collects during

its investigation.  Certain decisions, such as the weight to be assigned a particular piece of evidence, lie at the core of that evaluative process.").  It is clear that, absent the disputed faxes, the weight of the evidence tends to indicate that Mr. A acted alone in managing Yousheng USA/Jinfu USA.  Accordingly, Commerce's determination that CEO B did not exercise control over Mr. A at the time of the relevant sale is supported by substantial evidence and is sustained.

> II.   Commerce's Determination that CEO B Did Not Own
>       Yousheng USA/Jinfu USA on November 2, 2002 Is Sustained

The court now reconsiders plaintiff's contention, that CEO B owned Yousheng USA/Jinfu USA on the date of the purported new shipper sale.  This court has previously held "that Commerce was not unreasonable in concluding that a company named Jinfu USA did not exist on November 2, 2002, and that CEO B did not own Jinfu USA or its predecessor Yousheng USA" until some later date. *Jinfu I*, 30 CIT at __, Slip Op. 06-137 at 22.  Plaintiff has asked the court to revisit that holding in light of the Federal Circuit's recent decision in *Crawfish Processors Alliance v. United States*, 477 F.3d 1375 (Fed. Cir. 2007) ("*Crawfish Processors*").  *See* Pl.'s Comments 15-19.

The issue before the Court in *Crawfish Processors* concerned the type of evidence that could be relied upon to provide substantial evidence that a transfer of ownership had taken place

sufficient to demonstrate affiliation.  *See Crawfish Processors*, 477 F.3d at 1380-81.  In that case, the party claiming affiliation purchased stock in the other entity with a promissory note committing the purchaser to pay the stock purchase price, in merchandise, over a period of time.  *See id.* at 1378.  Commerce rejected the purchaser's affiliation claim, asserting that 19 U.S.C. § 1677(33) requires that a "transfer of cash or merchandise" be fully effectuated within the period of review in order to demonstrate ownership, and that this did not occur here. *See id.* at 1380-81.  The Federal Circuit rejected Commerce's requirement that payment be made within the period of review, stating that "[t]he statute imposes no time requirement on financial transactions showing affiliation."  *Id.* at 1381.

Plaintiff now argues that because the court's previous ruling on the question of ownership was based, in part, on the fact that CEO B did not pay for his interest in Yousheng USA/Jinfu USA until more than one year after the new shipper sale, *Crawfish Processors* requires a finding that CEO B owned the company on November 2, 2002.  *See* Pl.'s Comments 17.  The court finds that plaintiff misconstrues the holding of *Crawfish Processors* and overstates its application to the present matter.

The critical distinction between these cases is that the petitioners in *Crawfish Processors* demonstrated that the transfer of ownership itself took place notwithstanding the method of

payment; here, plaintiff cannot demonstrate that CEO B acquired Yousheng USA/Jinfu USA by November 2, 2002.  To the contrary, the record in this case demonstrates that CEO B failed to acquire Yousheng USA/Jinfu USA prior to the November 2, 2002 sale.  The court has previously detailed six independent reasons in support of this conclusion.  *See Jinfu I*, 30 CIT at __, Slip Op. 06-137 at 22-25.  They are that: (1) Yousheng USA was not renamed Jinfu USA until at least November 8, 2002; (2) either Mr. A or Mr. D owned Yousheng USA from its date of incorporation at least until its name was changed to Jinfu USA; (3) the Certificate of Transfer of Shares explicitly stated that it is to be "EFFECTIVE UPON EXECUTION BY THE UNDERSIGNED" and that the execution took place on December 30, 2003; (4) CEO B did not pay Mr. D the consideration for the shares until more than a year after November 2, 2002; (5) the portion of the November 18, 2002 Master Application for Jinfu USA's business license that asked if Yousheng USA was owned, controlled or affiliated with another entity was left blank; and (6) the tax return stating that Jinfu USA was wholly owned by CEO B was dated June 13, 2003, unsigned, and may never have been filed.  *See id.* at __, Slip Op. 06-137 at 22-24.  Even if the court were to "discount[] the importance of the time when final payment was made," as urged by plaintiff, it still could not conclude that CEO B acquired Yousheng USA/Jinfu USA prior to November 2, 2002 because there is no documentary

evidence that the acquisition took place.

Plaintiff, however, continues to argue that a contract of sale need not be in writing to be effective. *See* Pl.'s Comments 17-19. While this may be true, plaintiff has offered no reliable evidence demonstrating when the contract to transfer ownership of Yousheng USA/Jinfu USA was formed. Nor, for that matter, is there any evidence that any claimed oral contract provided for payment at a future date, an important element in the holding of *Crawfish Processors*.

As previously noted in *Jinfu I*, all of the evidence plaintiff has presented regarding CEO B's ownership of Yousheng USA/Jinfu USA is both equivocal and dated after November 2, 2002. *See Jinfu I*, 30 CIT at __, Slip Op. 06-137 at 22. Neither the holding of *Crawfish Processors* nor "basic principles of contract law" can save plaintiff from its failure to produce convincing evidence of when the transfer of ownership took place. Therefore, the court continues to find that Commerce's determination that CEO B did not own Jinfu USA or its predecessor Yousheng USA on November 2, 2002 was supported by substantial evidence, and as such, must be sustained.

CONCLUSION

Accordingly, the court finds that Commerce's determination that Jinfu PRC was not affiliated with Yousheng USA/Jinfu USA on November 2, 2002 was supported by substantial evidence. Therefore, the court sustains Commerce's Remand Redetermination. Judgment shall be entered accordingly.


                                        /s/Richard K. Eaton
                                           Richard K. Eaton


Dated:    April 4, 2008
          New York, New York